(112 App. Div. 318)

ABRAHAMSON v. GENERAL SUPPLY & CONSTRUCTION CO.

(Supreme Court, Appellate Division, Second Department. April 27, 1906.)

MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE OF "PUSHER."

 A "pusher" in charge of a gang of five or six structural ironworkers, whose work is the same except that he sees that they all work to advantage, is not a superintendent, within the employers' liability act, for whose negligence in directing the starting of the hoisting engine the master is liable.

 Hooker, J., dissenting.

Appeal from Trial Term.

Action by Harry Abrahamson against the General Supply & Construction Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Frank Verner Johnson, for appellant.
A. L. Pincoffs (Edward D. O'Brien, on the brief), for respondent.

WOODWARD, J. The plaintiff was employed by the defendants as a structural iron worker, engaged with others in erecting the ironwork

on a building at Spring street and Broadway, in the city of New York, and he brings this action to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the superintendent, or of one "whose principal duty was superintendence, and who was intrusted with and exercised such superintendence," etc., in behalf of the defendant; the effort being to bring the plaintiff's case within the employers' liability act. The case was submitted to the jury, and, assuming the facts to be as the jury has found them, is the defendant liable? That is the broad question submitted upon this appeal. The evidence shows that the plaintiff was employed with others in the erection of the ironwork for a building at the corner of Spring street and Broadway; that the work was under the superintendence of one Norton, who was present and in charge of the work at the time of the accident; that in the practical work of erecting the iron superstructure it is customary to divide the workmen up into gangs of four to six persons, each gang having its particular branch of the work to perform, some in assembling the iron, others in hoisting it by means of derricks, engines, and other apparatus into position, while others are engaged in riveting the irons thus placed; that by a process of natural selection one of each gang is picked out as leader; or, as he is known in the business, as the "pusher." He is engaged in the actual manual labor, the same as the others, but he is indicated as the one who is to keep things moving, to see that the men work to advantage, and he is given a slight advance in his pay because of this extra responsibility. He is not a superintendent of construction, he has no voice in determining anything in relation to the general work, but is simply pointed out as the leader of the gang for the purpose of securing greater efficiency in the detail of the work assigned to the particular gang, and it is the alleged negligence of one of these "pushers" that forms the basis of the plaintiff's claim of negligence on the part of the superintendent. On the day of the accident the plaintiff composed one of a gang engaged in hoisting certain iron I-beams, about 22 feet in length and 15 inches in width, from one of the floors of the building to the floor above by means of a derrick. These beams were standing upright on their flanges, alongside of each other and a few inches apart. While in the act of hoisting one of these beams, it in some manner hit against another standing alongside of it, tipping the latter over onto the plaintiff's foot, causing the injuries for which he seeks recovery; it being alleged, and the jury may be assumed to have found, that this was caused by the "pusher" signaling to the man at the engine to start up before all of the men engaged in the work were in their proper positions, it being stated that the plaintiff was unable to reach the position where his duties required him. Assuming that a mere error in judgment on the part of a superintendent in directing the engine to be started in the detail of this work constitutes negligence, it is entirely clear that under the circumstances of this case there was no common-law liability, for the master owed no duty except to furnish a reasonably safe place in which the work was to be performed, reasonably safe and proper tools and appliances, and competent fellow servants, and no neglect is suggested in these particulars. The sole ground of liability, if there be any, must

be under the employers' liability act, because of the negligence of the defendant's superintendent. There is no suggestion that there was any negligence on the part of Mr. Norton, the superintendent regularly employed by the defendant; there is no dispute that Mr. Norton was present, and in general charge of the work at the time of the accident; and the whole case rests upon the verdict of the jury that the "pusher" was acting in the capacity of a superintendent, and we are clearly of the opinion that the evidence does not justify the conclusion. The use of the word "superintendent" in the statute suggests to the mind at once the idea of one who superintends; of one who has general authority; who stands in relation to the particular work in the same relation that the master would stand if he were personally present. The statute, in its spirit, says that it proposes to enlarge the liability of the master by making him liable for the negligence of the master as represented by the superintendent whom he has selected; that, in addition to the common-law duties, the master must see to it that the man who is placed in charge of his work shall not, in the exercise of the authority of the master, involve the employés in dangers, and the scope of the enactment should not be enlarged beyond the fair intent of the Legislature, by attempting to hold the employer liable for every act of every individual who at any given moment assumes to be acting with authority. Clearly, the Legislature never intended to make the master liable for the negligence of a fellow servant engaged in the details of a work, simply because that fellow servant may have been designated as the leader of his particular group, for the mere purpose of harmony and efficiency in the carrying on of the work; and the evidence in this case goes no farther than this. It shows only that the man who signaled the engineer to start the engine was at work in the same gang with the plaintiff, that they were all engaged in a common purpose, and that the only authority of the man whose act it is alleged to have caused the accident was to lead the men, to indicate to them where to take their places in the conduct of the work, and what to do in hoisting these beams. If no one had been selected as such leader, there would have been a leader developed by the natural law of selection, and it can hardly be claimed that the master would have been liable for the acts of such a leader; and it is hardly more in harmony with common sense to suggest that this common laborer, one of a gang of five or six men engaged in hoisting beams in the general scheme of construction, was in any proper sense a superintendent, for whose negligence in the performance of a mere incidental detail of the work the master could be held liable. If Mr. Norton, or, in his absence, some one who was recognized as his representative, had stepped in and interfered with the detail of the work, and it had resulted in an injury, it might be that the master would be liable; but no such situation is presented. Competent and experienced men were engaged in operating a hoisting machine, requiring no special superintendence. No one was employed to suprintend this particular work with any discretionary powers, and the only facts on which the theory of the plaintiff are based is that one Knott had been designated as "pusher"; that he had been picked out to push the work along, and keep the men in his gang intelligently engaged in

this portion of the work, and that he received perhaps 25 cents per day more for doing the same work that the others were engaged in, and seeing that they all worked to advantage. The testimony is undisputed that Knott worked just the same as the others worked. He was there to help in moving these iron beams, and he did whatever was necessary in the work the same as the others, and he had no authority over any of them, except in the mere matter of placing them in their work. There was no requirement for a superintendent in any proper use of that word. The master had not assumed to place a superintendent over this gang of men, although a superintendent of the general work had been chosen and was in actual charge, and we find no case in which it has been held that such an employé was within the language of the act imposing a liability upon the master for the neglect of his superintendent.

This is not the case of a train dispatcher, charged with the duty of superintending the yard and regulating the running of trains within such yard, giving a signal to start before seeing that employés were out of danger, as in McHugh v. Manhattan Ry. Co., 179 N. Y. 378, 385, 72 N. E. 312, but is simply the act of a fellow laborer giving a signal to start a stationary engine for the purpose of carrying on a detail of the work, and, even if Knott had had some of the attributes of a superintendent, this act would not have been an act of superintendence. It was an act that the plaintiff himself, or any one of the gang, might have made with equal propriety, so far as the evidence discloses. They were to hoist these beams. To hoist them required the operation of the engine, and it is conceded that the plaintiff and another had made the proper fastenings to enable the engine to lift the beams, and the alleged negligence consisted in starting the engine at a time when the plaintiff claims the fall was not in exactly the right position. But that might be a mere error in judgment, nor constituting negligence, and it was not made the duty of Knott, more than of any one else, to signal the engineer; and the fact that he may have signalled the engineer in the performance of a mere detail of the work in which all were engaged was not an act of superintendence, as distinguished from a detail of the work. "There are many acts," say the court in McHugh v. Manhattan Ry. Co., supra, "the nature of which is such as to clearly establish their character, whether of ordinary labor or of superintendence, and this regardless of whether the act may be done on a particular occasion by a superintendent, or by an ordinary workman", and this, we take it, is the real test to be applied, whether the occasion is one demanding superintendence, and whether the master has authorized any one to assume that relation to the work. If the work is such that the master owed no duty of furnishing a superintendent as a part of the corps of competent fellow servants, or if he has furnished a competent superintendent, and the accident happens through no neglect of such superintendent, but through the error or neglect of a fellow servant engaged in the carrying out of the details of the work, there can be no liability under the employers' liability act, and that seems to us to be the situation presented by the case now before us. This seems to be the doctrine of the Massachusetts case arising under a

similar statute, and we are persuaded that it is in harmony with the legislative intent. See Joseph v. George C. Whitney Co., 177 Mass. 176, 178, 58 N. E. 639, and authority there cited; Riou v. Rockport Granite Co., 171 Mass. 162, 164, 50 N. E. 525, and authorities there cited; Flynn v. Boston Electric Light Co., 171 Mass. 395, 50 N. E. 937; McPhee v. New England Structural Co., 188 Mass. 141, 144, 74 N. E. 303, and authorities there cited. In the latter case one Cairns was in charge of a gang of men engaged in constructing the ironwork for a bridge. He was not only the superintendent in charge of the work, but he ran the engine used in placing the iron, and it was held that the superintendent, in deciding that the engine should be started, was engaged in an act of superintendence; but that was a case in which there was no question of the position which Cairns occupied. He was there in charge of the work. He was the superintendent supplied by the master, and his negligence in starting the engine was held to be chargeable to the master; but that is a very different case from that at bar, for here there was a superintendent in actual charge of the work, and the accident occurred, as we may assume, from the negligence of one engaged in a mere detail of the general work.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur, except HOOKER, J., who dissents.