(120 App. Div. 595)

HOPE v. SCRANTON & LEHIGH COAL CO.

(Supreme Court, Appellate Division, Second Department. June 28, 1907.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—ACTION UNDER EMPLOYERS'
   LIABILITY ACT.
       Employers' Liability Act, Laws 1902, p. 1749, c. 600, provides that be-
   fore the commencement of an action under the statute, and within a
   specified time after the injuries, plaintiff shall cause a notice of his claim
   to be served on defendant. *Held*, that the notice is a condition precedent
   to an action under the statute.
       [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, § 806.]

2. PLEADING—ADMISSIONS BY PLEADING.
       In an action under the Employers' Liability Act, Laws 1902, p. 1748,
   c. 600, the complaint alleged that plaintiff caused the required notice
   to be served on defendant within the required time. The answer denied
   the allegations, except that defendant admitted that it received the
   notice "on or about June 16th, 1906." The summons was dated June
   13th, and was served June 15th. *Held* that the admission of the answer
   was not an admission that notice was served prior to the commencement
   of the action.

3. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS.
       Plaintiff and C. were employed to drive coal wagons for defendant.
   During the necessary absence of the regular superintendent of deliveries,
   C., pursuant to the orders of the superintendent, acted in such capacity.
   After plaintiff's wagon had been emptied at a place where he was de-
   livering coal, C. undertook to assist plaintiff in closing the tailboard
   of plaintiff's wagon, and directed plaintiff to raise the hook at one side
   of the rear end of the wagon which held the tailboard, and while plain-
   tiff was holding it C. allowed the tailboard to fall, so that plaintiff was
   injured. *Held*, that C. was not intrusted with and exercising super-
   intendence within Employers' Liability Act, § 1, subd. 2, Laws 1902, p.
   1748, c. 600, giving a servant an action where an injury results by reason
   of the negligence of any person in the service of the employer intrusted
   with and exercising superintendence whose sole or principal duty is
   that of superintendence, or, in the absence of such superintendent, of
   any person acting as superintendent with the authority or consent of
   such employer.
       [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, §§ 371, 372.]
       Gaynor, J., dissenting in part.

Appeal from Municipal Court, Borough of Brooklyn, First District.
Action by Michael Hope against the Scranton & Lehigh Coal Com-
pany. Appeal by defendant from a judgment in favor of plaintiff.
Reversed, and new trial ordered.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MIL-LER, JJ.

Frederick B. Campbell, for appellant.

George V. Smith, for respondent.

HOOKER, J.   The plaintiff has had a judgment in this action of master against servant under the provisions of the employers' liability act.   The appellant contends that the judgment should be reversed because there was no proof of the service of the notice required by section 2 of the employers' liability act (Laws 1902, p. 1749, c. 600).   The complaint in its eleventh paragraph alleges:

"That before the commencement of this action, and within 120 days after the receipt by him of said injuries, this plaintiff caused to be served upon the defendant a notice in writing of the claim made by him herein, which notice contained a statement of the time, place, and cause of the injury hereinbefore set forth."

The summons was dated June 13, 1906, and was served on the defendant on June 15, 1906.   The answer of the defendant denies the allegations contained in the paragraph of the complaint numbered 11, "except that the defendant admits that it received on or about the 16th day of June, 1906, a notice in writing purporting to set forth an alleged time, place, and cause of an alleged injury."   The proof is silent as to the service of any notice of the time, place, or cause of the alleged injury.

We think that the action may not be maintained under the employers' liability act for want of proof of the service of the notice. The notice required by section 2 of the act is a condition precedent to the commencement of an action brought solely under the act, which is this case, for without the advantage of the provisions of the act it must be conceded that the plaintiff is not entitled to recover.   The proposition that such an action may not be brought until after the service of such notice has been squarely passed upon by this court in Grasso v. Holbrook, Cabot & Daly Co., 102 App. Div. 49, 92 N. Y. Supp. 101.   See, too, Veginan v. Morse, 160 Mass. 143, 35 N. E. 451. In this action the allegation of service of the notice before the commencement of the action is squarely denied by the answer, which made it incumbent upon the plaintiff to offer his proof.   The admission in the answer does not assist the plaintiff, for the reason that the admission is that the notice was served on or about the 16th day of June, 1906, while the summons was dated June 13th and served June 15th. The admission, therefore, is not of the fact that the notice was served prior to the commencement of this action, but rather that such a notice was served after an action was begun.

We think, too, that the judgment may not be sustained for the reason that the act of Carr, which caused the injury, was rather the negligence of a fellow servant than of a superintendent intrusted with and exercising superintendence.   The facts are scarcely in dispute. The defendant was in the business of selling and delivering coal, and on May 8, 1906, the plaintiff, a driver of one of the defendant's coal wagons, was engaged in delivering coal at the dry-goods establishment of Abrahams & Straus.   McElarney was foreman or super-

intendent of deliveries in the employ of the defendant, whose duties were to direct the details of delivering coal at various places, to see that it was delivered on time, quickly and expeditiously, to see that all litter created by the delivery was cleared away thereafter, and to collect certain receipts and tickets. He was necessarily absent on May 8th while coal was being delivered to Abraham & Straus, but directed one Carr to take his place on this occasion. Carr was an ordinary driver, engaged in an occupation similar in its character to that of the plaintiff. The wagons were emptied by raising a tail-piece at their rear ends. After the plaintiff's wagon had been emptied, Carr undertook to assist him in closing the tailboard of his wagon, and directed him to raise the hook at one side of the rear end of the wagon which held the tailboard open. While the plaintiff was hold-ing the hook, Carr suddenly "slammed down" the tailboard, so that in its fall it struck and injured one of the plaintiff's fingers, for which injury this action was brought. Assuming that Carr was acting as superintendent in the absence of McElarney, with the authority and consent of the employer, yet we believe that Carr's act in slamming down the tailboard was not one of superintendence, and hence the plaintiff does not make out a case under the statute. The Employers' Liability Act, § 1, subd. 2, permits an action where injury results "by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence whose sole or prin-cipal duty is that of superintendence, or in the absence of such super-intendent, of any person acting as superintendent with the authority or consent of such employer." The courts of this state, and the courts of Massachusetts in construing a statute in this particular similar to our own, have given substantial effect to the words "and exercising superintendence"; that is, when a person is employed to work with his hands as well as to exercise superintendence, the line must be drawn somewhere between what are acts of superintendence and what are acts of manual labor, and the master will be liable only for the neg-ligence of the superintendent for such acts as are of superintendence. In McCauley v. Norcross, 155 Mass. 584, 30 N. E. 464, the defendant in erecting a large building had placed certain iron beams in an un-stable position. The superintendent, in order to pass between a pile of planks and these beams, pushed with his foot one of these beams, which fell and hurt plaintiff. A recovery for the plaintiff was up-held on the theory that the defendant had allowed such things to be negligently left for a long time in that position, and not on the theory that it happened to be the superintendent who tipped over the beams; and the court said in that connection:

"The fact that the superintendent himself happened to be the person who pushed the beam with his foot is of no importance, because that was not an act of superintendence."

In Joseph v. George C. Whitney Co., 177 Mass. 176, 58 N. E. 639, the plaintiff, appealing from a judgment entered upon a direction of a verdict, was shown to have had his hand between the jaws of an embossing machine, the power being off. The superintendent, exam-ining an adjoining machine, with his back to the plaintiff's machine, carelessly touched some part of the plaintiff's machine, which started

its operation and injured the plaintiff's hand. In overruling the plaintiff's exceptions, the court said:

"If the motion of Meyer" (the superintendent) "which caused the injury be regarded as part of an act of superintendence, the fact that he was superintending was in no way a necessary element in producing the injury. But we are of opinion that by a true construction of the statute the superintendence must contribute as such, and that when, as here, it had nothing to do with the injury qua superintendence, the case is not within the act."

In Cashman v. Chase, 156 Mass. 342, 31 N. E. 4, the rule was specifically recognized and decided in this clear language:

"The negligence for which the statute makes the employer liable is that of a person 'intrusted with and exercising superintendence.' The employer is not answerable for the negligence of a person intrusted with superintendence, who at the time, and in doing the act complained of, is not exercising superintendence, but is engaged in mere manual labor, the duty of a common workman."

The following English cases are cited as recognizing that the employé may be the superintendent for some purposes, and at the same time an ordinary workman, and if negligent in the latter capacity the employer is not answerable: Schaffers v. General Steam Navigation Co., 10 Q. B. D. 356; Osborne v. Jackson, 11 Q. B. D. 619; Kellard v. Rooke, 19 Q. B. D. 585, and 21 Q. B. D. 367. Proceeding, the opinion in the Cashman Case defines what superintendence is thus:

"Unless the act itself is one of direction or of oversight, tending to control others and to vary their situation or action because of his direction, it cannot fairly be said to be one in the doing of which the person intrusted with superintendence is in the exercise of superintendence. For the negligence of such a person in doing the mere work of an ordinary workman, in which there is no exercise of superintendence, the employer is not made responsible by the statute."

The cases in this jurisdiction, while not stating the rule in so many words, seem all to proceed upon the assumption that it exists. In McHugh v. Manhattan Railway Co., 179 N. Y. 378, 72 N. E. 312, it was decided that the servant, who stood upon the elevated platform of the defendant's railway and gave the signal to start the trains when they were ready, after having been coupled to a new engine, was performing duties or functions of superintendence. It was argued by the defendant in that case that the particular duty of seeing that the coupling was made and that the person who performed the act of coupling was safely withdrawn, and thereupon of giving the signal to start the train, was not in the nature of superintendence, but merely a detail of the work, for negligence in the discharge of which duty the defendant was not liable under the employers' liability act. The court said (page 384 of 179 N. Y., page 314 of 72 N. E.):

"This is the most serious question presented by the case. * * * There are many acts the nature of which is such as to clearly establish their character, whether of ordinary labor or of superintendence, and this regardless of whether the act may be done on a particular occasion by a superintendent or by an ordinary workman. On the other hand, there are many acts which are indeterminate in their character, and whether they are to be deemed acts of superintendence or not may depend on the manner in which the busi-

ness is conducted and the rank and position of the employé to whom the performance of those acts is intrusted."

In Quinlan v. Lacawanna Steel Company, 107 App. Div. 176, 94 N. Y. Supp. 942, the majority of the court decided that Knapp, the superintendent, was not engaged in an act of superintendence at the time the injury occurred. The two justices who dissented filed separate memoranda, and all three opinions gave assent to the proposition that under the employers' liability act the master is liable only when the superintendent is engaged in an act of superintendence.

In Bannon v. N. Y. C. & H. R. R. R. Co., 112 App. Div. 552, 98 N. Y. Supp. 770, it was held by the Appellate Division in the Fourth Department, on the authority of its decision in the Quinlan Case, supra:

"Liability for negligence in superintending is what is created by the statute, and not for the negligent act of a superintendent in no manner connected with his duties as such."

See, too, Abrahamson v. General Supply & Construction Co., 112 App. Div 318, 98 N. Y. Supp. 596, and Faith v. N. Y. C. & H. R. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774.

It is urged that the words "exercising superintendence" in the employers' liability act do not mean that the superintendent must have been exercising the duties of superintendence in the act which created the accident, because if that is the meaning of the statute, then there was no necessity for passing the statute and it accomplished nothing, since the master was always liable for the negligence of the superintendent while the latter was engaged in exercising superintendence This contention cannot prevail in the face of the authorities which have been cited. The Court of Appeals in McHugh v. Manhattan Railway Company, supra, points out what the statute accomplished without its going to this length. In that case Coleman was the regular train dispatcher, and Flanagan in his absence was performing his duties. Speaking of the liability of the defendant for the negligence of either Coleman or Flanagan, the court said (page 383 of 179 N. Y., on page 314 of 72 N. E.) :

"It may be conceded that, apart from the provisions of the employers' liability act, the defendant would not have been liable to its employés for the negligence of either Coleman or Flanagan. Loughlin v. State of N. Y., 105 N. Y. 159, 11 N. E. 371. By that statute, however, a new liability was imposed on the master."

And then the court proceeded with the discussion, and reached the conclusion that Flanagan was performing the duty of superintendence, that he was negligent in the performance of that duty, and that the defendant was liable.

At common law the rule obtained that, if a co-servant whose negligence caused an injury was at the time representing the master in doing the master's duty, the latter was liable; but if, on the other hand, he was simply performing the work of a servant in his character as such, the master was not liable. By the enactment of the statute the Legislature contemplated, and the courts have given effect to its intention, that a co-servant might be performing duties of super-

intendence without necessarily doing the things which at common law were understood to be the master's duty; and under the statute the master is liable in such cases, provided, of course, the negligence was of the superintendent in an act of superintendence.

It is true, as urged in behalf of the respondent, that the superintendent does not necessarily cease to be such because he performs acts of manual labor. Indeed, in Reynolds v. Barnard, 168 Mass. 226, 46 N. E. 703, the court says that "the fact that the person in charge does manual labor is not conclusive upon the question whether his principal duty is that of superintendence"—citing cases. See Labatt on Master and Servant, § 688 and note, and authority cited. The servants who were held to be superintendents in McBride v. New York Tunnel Co., 101 App. Div. 448, 92 N. Y. Supp. 282, affirmed 99 N. Y. Supp. 571, 113 App. Div. 821; Randall v. Holbrook Contracting Co., 95 App. Div. 336, 88 N. Y. Supp. 1114, and Roche v. Lowell Bleachery, 181 Mass. 480, 63 N. E. 943, all performed manual labor, but were held to have been superintendents none the less. These cases are readily distinguished from the one at bar.

The rule being, therefore, that the employers' liability act must be construed to create a liability against the employer for acts of a superintendent only when he is engaged in an act of superintendence, we come to an examination of the conduct of Carr, that it may be determined whether, conceding that he was a superintendent, he was engaged in an act of superintendence at the time the plaintiff's hand was hurt; and in judging his conduct we must be guided by the rule that unless his act was one of direction or oversight, tending to control the plaintiff or vary his situation or action because of such direction, the act is not one of superintendence. It seems reasonably clear that Carr's conduct in slamming down the tailboard was merely an act of one driver assisting another in the preparation of the latter's wagon for leaving the premises after the delivery of coal, and was not connected with giving direction to the plaintiff in any way which might control his conduct or alter his situation in respect to the duties he was performing for the master. The duties of Carr, the superintendent, it will be remembered, were to direct when coal should be delivered, and how it should be unloaded, to obtain the proper checks and receipts, to see that the work was done expeditiously, and to direct the cleaning up afterwards. The closing of the tailboard had nothing to do with any of these duties, and was a mere assistance by Carr, the co-servant, to the plaintiff in preparing his wagon for leaving.

For these reasons, the judgment should be reversed and a new trial ordered, costs to abide the event. All concur.

GAYNOR, J. I do not concur in treating the admission of service of a notice as an admission of something that occurred after the action was brought. An admission in an answer can only be of something alleged in the complaint. This admission of service of a notice "on or about the 16th day of June" cannot therefore be taken as referring to something that took place after the action was begun, viz., on June 15th, but must be taken to refer to the allegation of service

in the complaint; and the phrase "on or about" is elastic enough to relate back that far.

On the main point, I agree that the act of a superintendent for which the master may be held liable under the employers' liability act must be an act of superintendence. It cannot be said that the statute only declared the common-law liability of the master for the acts of his superintendent as it then existed in this state. On the contrary, the purpose of the act was to extend such rule. Not, however, to the extent of making the master liable for acts of his superintendent which were not acts of superintendence. It can be given wide scope without going to that extreme. Under the common-law rule there were acts of superintendence for which the master was liable, i. e., acts which the master himself owed a duty to perform toward his servants; while for all other acts of superintendence, direction or authority outside of this restricted sphere he was not liable. Cases like Loughlin v. State of New York, 105 N. Y. 159, 11 N. E. 371, furnish full illustration of this. The act of the superintendent there—and in like cases—held to be that of a fellow servant for which the master was not liable, was an act of authority and superintendence, but not one within the duty of master to servant. The employers' liability act extended such liability of the master to all acts of superintendence, but did not extend it to acts not of superintendence, though performed by a superintendent. The act of alleged negligence in this case was not one of superintendence.