(61 Misc. Rep. 504.)

### ANDERSON v. PENNSYLVANIA STEEL CO.

(Supreme Court, Trial Term, New York County. December, 1908.)

MASTER AND SERVANT (§ 182*)—INJURIES TO SERVANT—FELLOW SERVANT EXER-
CISING SUPERINTENDENCE.

An employé *held* exercising the powers of superintendent, so as to ren-
der his employer liable for his acts whereby another servant is injured.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371,
372; Dec. Dig. § 182.*]

Action by Dagny Anderson, administratrix of Sofus K. Anderson,
against the Pennsylvania Steel Company. Verdict for plaintiff. Mo-
tion to set aside verdict and for a new trial. Denied.

H. M. Earle, for plaintiff.
Battle & Marshall, for defendant.

GUY, J. This action is brought by plaintiff, as administratrix of
her deceased husband, who sustained an injury, resulting in his death,
while engaged as defendant's employé in taking down certain steel
work on Blackwells Island Bridge, in this city, in March, 1907. The
testimony showed that the decedent was upon the steel structure, and,
having fastened a rope to a part thereof, for the purpose of lowering,
was in the act of descending when the premature starting of an engine
caused the loose end of the rope to ascend rapidly and get fouled in
part of the structure, causing the end of the rope to swing against
decedent with such force as to knock him from the structure to the
ground. Plaintiff introduced testimony establishing that the engine
was started by direction of one Lannon, a "shover" and "subforeman"
having charge of a small gang of men, who were subject to his orders
in performing the work on which decedent was engaged at the time
of his death; and plaintiff claims that his act in directing the starting
of the engine was one of superintendence. Defendant denied negli-
gence on its part, denied that Lannon was acting as superintendent,
and introduced evidence to show contributory negligence on the part
of the decedent.

The uncontradicted evidence introduced by the defendant shows that
there was a general superintendent, named Wright, employed by de-
fendant, clothed with general powers of superintendence over all the
work of demolition on said bridge, and that Lannon acted under his
general instructions. The testimony as to contributory negligence on
the part of decedent was conflicting; two witnesses for defendant tes-
tifying positively that they heard and saw decedent himself signal to
Lannon and shout to him to start up the engine, while two of plain-
tiff's witnesses, who were near decedent, testified that they did not
hear decedent shout or see him signal. The jury rendered a verdict
in favor of the plaintiff, and a motion was made by defendant to
set aside the verdict and for a new trial on the usual grounds.

The defendant bases his motion to set aside the verdict and for a
new trial mainly on the rule laid down in Abrahamson v. General Sup-
ply & Construction Co., 112 App. Div. 318, 98 N. Y. Supp. 596, in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which it was held that a "pusher," engaged in performing work similar to that performed by the foreman, Lannon, in this case in giving a signal to start an engine, which signal was given before the plaintiff had reached a place of safety, was not a superintendent, but a fellow servant of the plaintiff, for whose negligence the employer was not liable. In that case, however, there was an entire absence of evidence showing that the foreman whose negligence was alleged to have caused the accident was charged with any of the duties or intrusted with any of the powers of a superintendent. He was a workman, who "did whatever was necessary in the work, the same as the others, and had no authority over any of them, except in the mere matter of placing them at their work."

The evidence in the present case shows that, notwithstanding the fact that there was a superintendent employed by the defendant who had general charge of the work of demolition on the bridge and general authority over the several gangs of men who were engaged in doing such work, the superintendent "did not bother about details," but intrusted them entirely to the discretion of Lannon, the foreman, as to whom the general superintendent, Wright, testified:

"He had been at the business longer than I had, and, I presume, knew."

It is abundantly shown from the evidence that the work being performed by the men in charge of the foreman, Lannon, was of such a dangerous character as to require active superintendence in matters of detail on the part of the employer or his authorized representative in order to properly safeguard the employés, and such superintendence was a duty which the employer owed to his employés. The mere employment of a general superintendent, or designating him as superintendent, is not conclusive; and if, as in this instance, the superintendent fails to perform the duties of superintendence, and, with the approval or consent of the employer, directs or permits another employé to assume the authority and actually perform the duties of superintendence, the employer cannot escape liability for such other employé's acts.

The question is, not who was designated superintendent by the employer, but who actually was performing, at the time of the accident, the duties of superintendence in connection with this particular work which the law imposes upon the employer. It is clear from the evidence that the duties performed by Lannon were mainly those of a superintendent, and that he, and no other, customarily performed such duties, so far as the details of superintendence and authority and power of direction over the workmen engaged in this particular work were concerned. The superintendent, Wright, testified that the only instructions he gave to Lannon in connection with the work were that he told hi n at the beginning of the day of the accident "to go ahead and get the work down." His testimony further shows that just previous to the accident he was in the immediate vicinity, not engaged in directing or superintending the work, but that he had come from the docks, "and just walked up behind Mr. Lannon, and was looking over his shoulder watching the man make fast to a piece of iron," and that his

attention at the exact time of the accident was directed to another part of the bridge.

In McBride v. New York Tunnel Co., 101 App. Div. 448, 92 N. Y. Supp. 282, affirmed 187 N. Y. 573, 80 N. E. 1113, it was held that though a general superintendent was employed in connection with excavation work for a tunnel, where the accident occurred through the premature firing of a blast by a foreman of blasters, whose duty it was to direct the drillers where to drill holes and when to depart for a place of safety, the foreman firing the blast was a superintendent under the employer's liability act (Laws 1902, p. 1748, c. 600), and that the firing of the blast was an act of superintendence for which the employer was liable. In affirming the judgment in that case the court said:

"While it is true that there was a general superintendent of the work over Martin, yet he did not assume to take the immediate charge of the details in prosecuting the work, but delegated that branch of superintendence to Martin, who thereby became the alter ego of the master."

Again, in Guilmartin v. Solvay Process Co., 189 N. Y. 490, 82 N. E. 725, it was held that the foreman of a shift in which plaintiff worked, having authority to stop the machinery in case of emergency, was a superintendent under the act, and his action in directing plaintiff to attempt to disengage a belt from a pulley while the machinery was in motion was an act of superintendence. If authority to direct the stopping of machinery in an emergency constitutes superintendency, it would seem that like authority to start machinery in an emergency should be so construed.

In Carlson v. United Engineering & Contracting Co., 113 App. Div. 371, 98 N. Y. Supp. 1036, where the plaintiff was injured by the premature starting of an engine at a time when plaintiff was in an unsafe place, by direction of a foreman whose duties were "to rig the carpenter work and everything that was to be done around the work," the court held that the act of starting the engine was an act of superintendence, and the fact that there was a general superintendent, who was not taking charge of the particular work at the time, did not relieve the employer from liability.

In Faith v. New York Central & H. R. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed 185 N. Y. 556, 77 N. E. 1186, the same rule is recognized. In that case there was a superintendent in general charge of the work, but the workmen in each branch of the work were under the orders and subject to the control of a foreman. The injury to the plaintiff was due to the negligent act of such foreman in unloosening prematurely the bolts on a boiler while plaintiff was in a position of peril. The court, in sustaining the verdict rendered in favor of the plaintiff, said:

"We think the evidence in this case very conclusively establishes that Norris, although designated as foreman or inspector, was intrusted with and was exercising superintendence. * * * All was being done under his supervision. He occupied precisely the same relation to the men under him as Peters, the general superintendent, would have done had he been present."

So, also, in Mikos v. New York Central & H. R. R. R. Co., 118 App. Div. 536, 102 N. Y. Supp. 995, affirmed 191 N. Y. 506, 84 N.

E. 1116, the court held that one who, in the absence of the regular foreman, had control of the men engaged in handling engines in an ash pit, was acting as a superintendent within the meaning of the act.

The question of the negligence of Lannon and of decedent's contributory negligence was properly left to the jury, and there is sufficient evidence to sustain the verdict on those points. It is true that two of the witnesses produced by the defendant testified positively to hearing the decedent shout and seeing him signal to Lannon to go ahead; and this is, in one sense, positive evidence, as compared with the negative evidence of the witnesses for the plaintiff, who testified that they were near the decedent immediately prior to the accident, one of them looking directly at him, and did not hear him shout or see him signal. But the jury were justified in taking into consideration the better opportunity of plaintiff's witnesses to observe the acts and words of the decedent, and also, in determining the value of the testimony of defendant's witnesses, they had a right to give consideration to the fact that both witnesses were, at the time of the accident, in the employ of the defendant, and one was the foreman whose negligence was alleged to have been the cause of the accident.

Motion to set aside verdict and for a new trial denied.