PROCTOR & GAMBLE CO. v. WILLIAMS.

(Circuit Court of Appeals, Second Circuit.  December 12, 1910.)

No. 92.

**1.** MASTER AND SERVANT (§ 279*)—INJURIES TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for injuries to a servant by his clothes becoming caught in a revolving shaft, evidence *held* to warrant a finding that a fellow servant who was directing the manner of performing the work was negligent either in directing the continuance of the work while the live shaft was in motion, or in so placing the staging as to expose plaintiff when standing thereon to the risk of being caught, when by the exercise of ordinary care it could have been safely placed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975;  Dec. Dig. § 279.*]

**2.** MASTER AND SERVANT (§ 196*)—INJURIES TO SERVANT—FELLOW SERVANTS.

Where plaintiff worked in defendant's factory as a helper to S., who, with his father and another, all millwrights, usually worked together in one gang, plaintiff helping the others as well, when directed to do so by S., plaintiff and S. were fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 486–488;  Dec. Dig. § 196.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668;  Flippin v. Kimball, 31 C. C. A. 286.]

**3.** COURTS (§ 366*)—FEDERAL COURTS—RULES OF DECISION—STATE STATUTES—CONSTRUCTION.

In an action in a federal court for injuries to a servant based on the New York employer's liability act (Laws, 1902, c. 600), such act will be construed in accordance with the construction placed thereon by the highest state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–968;  Dec. Dig. § 366.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71;  Hill v. Hite, 29 C. C. A. 553.]

**4.** MASTER AND SERVANT (§ 182*)—INJURIES TO SERVANT — EMPLOYER'S LIABILITY ACT—PERSON EXERCISING SUPERINTENDENCE.

The New York employer's liability act (Laws 1902, c. 600) provides that the employer shall be liable for personal injuries to an employé "by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence, or, in the absence of such superintendent, of any person acting as superintendent, with the authority or consent of the employer." Plaintiff, a machinist's helper, was employed by defendant to assist S. and other millwrights, and on the day of his injury was directed by S. to go on a staging to loosen a set screw on the coupling attached to a dead shaft preliminary to taking the shaft down. The platform had been erected so that its center was midway between the dead shaft and live sections of shafts immediately beyond it;  the platform projecting about 15 inches under the live shafting.  S. directed plaintiff to loosen the screws of the live shafting while it was in motion, when it was entirely feasible to have done the work at noon when the live shaft was stopped, or to have so placed the staging that plaintiff would not have come in contact therewith.  Defendant had a general superintendent at the time of the accident, and he directed S. to take down the dead shaft, but gave no instructions as to the manner of performing the work, and afterwards came into the shop, and, seeing the men engaged in the work, paid no attention to them, instructing other mechanics as to their work for the day.  *Held,* that it was not essential

that a servant should be authorized to superintend by the corporation's board of directors in order that his act be that of a superintendent within such statute, and that S. should be regarded as exercising superintendence for defendant in the matter of removing the shaft, so as to render the master liable for his negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

In Error to the Circuit Court of the United States for the Eastern District of New York.

Action by John E. Williams against the Proctor & Gamble Company. Judgment for plaintiff, and defendant brings error. Affirmed.

B. L. Pettigrew, for plaintiff in error.

R. J. Donavan, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. Plaintiff was 22 years of age, and had been employed as millwright's helper in defendant's factory for about eight months. For the two months immediately preceding the accident he had acted as helper to Otto Schumann, who with his father, Henry Schumann, and Charles Roseman, all millwrights had usually worked together in one gang during this period, and plaintiff helped the others as well when directed to do so by Otto Schumann. His duties as a millwright's helper were to run errands for the millwright, strike blows with the hammer, use a wrench, assist in the assembling of the shafting, putting it in place and in the placing of machinery, and generally to do what he was told to do by the millwright.

On the day in question plaintiff and the two Schumanns were in one of the shops of the plant, through which there ran shafting about nine feet above the floor. One section of this shafting had been dead (that is, disconnected with the live or moving portion) for some time. The rest of the shafting was in motion. The dead section was a portion of the main shafting, by which the machinery in the shop was driven, and had been pushed over towards the west so that the clear space between the westerly end of the live shafting and the easterly end of the dead shafting was variously estimated by the witnesses at from six to twelve inches. The shafting was suspended in hangers placed at intervals of about eight feet. Upon the east end of the dead shaft there was a coupling ten inches long with screws in its west end to hold it on the shaft. There was a keyway in the west end of the live shaft designed to receive a set screw in the coupling which keyway had been widened and roughened somewhat by use. It had been decided to take down the dead shafting. To do that, it was necessary to erect a platform successively under each of the hangers and to attach a rope to either end of the shaft, after passing the same over the overhead timbers. The bearings of the hangers were to be taken out, so as to permit the shafting to be lowered directly to the floor. The nearest hanger to the easterly end of the dead shaft was four feet from that end. Under Otto Schumann's direction, a platform or staging was erected so that its center was midway between the dead and the live sections of shafting; the platform projecting about 15 inches under the

live shafting. He directed plaintiff to go up on the staging and loosen the set screw on the coupling. Plaintiff asked him if he was going to shut off the power, and he said: "It is all right. Get up there and loosen the set screws." During the noon hour the live shafting would stop, at which time it was expected to put a hanger on it. Plaintiff testified that he did not know of the existence of the roughened keyway. He mounted the staging and while working with a wrench at the screw, having his back towards the revolving shaft, his clothing was caught, and he was whirled around and badly hurt. It is conceded that, had the platform been erected underneath the hanger which was to be loosened, it would have been well away from the live shaft and the plaintiff could not have come in contact with it. The location of the scaffold was determined by Otto, who himself set the horses for it. He put it where it was instead of further west because there was a lot of stuff, scrap, valves, etc., lying on the floor which it would have taken them some time to move to make a place to stand the horse in. We are clearly of the opinion that there was enough in the record to warrant a jury in finding that Otto was negligent, either in undertaking the work on this hanger while the live shaft was in motion, or in so placing the staging as to expose the plaintiff when standing on it to the risk of being caught, which might have been wholly avoided by giving the time necessary to clear up the floor sufficiently to enable them to place the staging a short distance further west. But, if the action were the ordinary one, plaintiff could not recover for Otto's negligence, since they were fellow servants, although the latter gave him directions about the details of the work.

The action, however, is brought under the New York employer's liability act (chapter 600, Laws 1902), which provides that the employer shall be liable where personal injury is caused to the employé "by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence, or, in the absence of such superintendent, of any person acting as superintendent, with the authority or consent of such employer." The defendant had a general superintendent, Robert Anderson, who at the time of the accident was employed in supervising the equipment of the plant and the placing of the apparatus within the buildings. He hired the men, millwrights, helpers, and others. Manifestly he was within the terms of the statute as a "person intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence." In his particular sphere, the supervision of the work of equipping the plant and placing the machinery in place, he stood in place of the master. For that purpose he was the Proctor & Gamble Company, their alter ego. He was the one who determined that the dead shaft should be taken down and instructed Otto to attend to it. He gave no instructions as to the manner in which it was to be done. He afterwards came into the shop, and saw the three men there, but paid no attention to them, since he was instructing the other mechanics as to the work for the day.

It seems to us that the particular piece of work in which plaintiff was engaged was one which might reasonably be held to require su-

pervision. Of course, there were many details of the work, which in the nature of things would be left to the judgment of the workmen themselves, but surely it called for superintendence to determine whether or not work should be done near a live shaft while it was in motion, or whether such work should wait till it came to rest at noon hour. So, too, it would be for a superintendent to direct whether the staging should be placed in one location or another. If Anderson had not had other mechanics to direct, if he had remained in the room, superintending the job, it seems manifest that he would himself have given the directions as to these two details. When, therefore, he turned the whole matter over to Otto, without giving him any specific instructions, he authorized him during Anderson's absence to act as superintendent of that job. When Otto so acted, it was with the authority and consent of the general superintendent, which was the full equivalent of the authority or consent of the owner, since the general superintendent was the alter ego of the master. It cannot be that the statute affords no relief when the negligence is that of a person acting as superintendent, unless he is authorized so to act by resolution of the board of directors. This statute is a remedial one. It was intended to secure to all workmen proper and reasonable superintendence of all work on which they might be employed, by making the employer liable if he failed to provide such superintendence, and it would seem that it should be liberally construed.

This, however, is a state statute, and the federal courts will follow the construction placed upon it by the highest court of the state. It will be desirable, therefore, to examine the authorities cited on the briefs, to see if there is anything in them which would call for a different conclusion upon the facts than that above expressed.

In McConnell v. Morse Iron Works, 187 N. Y. 341, 80 N. E. 190, 10 L. R. A. (N. S.) 419, a plumber's helper was injured through the giving way of an unsound ladder which the plumber had selected out of a number of ladders supplied by defendant. The Court of Appeals held that:

"They were laborers engaged together doing the same class of work. Wilson as the mechanic, fitting or repairing pipes, and McConnell assisting him in the work. While it is true that it was McConnell's duty to obey Wilson's directions with reference to handing him tools and waiting upon him in various ways, which was necessary in the conduct of the work, we are clearly of the opinion that the relation between them was merely that of coemployés, and, that Wilson did not occupy the position, and had never been intrusted with the powers of superintendent within the meaning of the statute. The case is brought within the rule so often recognized and applied in this court, to the effect that, where the master has on hand at the place where the work is performed sufficient suitable material or appliances for the doing of the work, he is not liable for injuries resulting to a workman by reason of an error in judgment of the foreman or of a coemployé in selecting defective material or appliance."

This seems not to be a parallel case with the one at bar because no work was being done that required superintendence. If the general superintendent had been himself in the room actually superintending, it can hardly be claimed that it was any part of his duty to select a ladder out of the pile placed there for the workmen to choose from. But, if he had been superintending the work in the room where plain-

tiff was injured, he would be the one to determine whether any work should be done on the east side by the live shaft while it was revolving, and to direct where the staging should be placed.

In Lowrey v. Huntington Light & Power Co., 193 N. Y. 629, 86 N. E. 1127, the same court affirmed the Appellate Division writing no opinion. Reference to the opinion below (121 App. Div. 245, 105 N. Y. Supp. 852), shows that the alleged "superintendent" was foreman of a gang engaged in trimming trees, and that he did not devise the method of trimming the tree: that he gave no instructions or orders in the doing of the work, merely holding the rope attached to a smaller limb as two other workmen held the rope attached to a larger one. "The directions that were given were not by him, but rather to him, for the plaintiff called out to him not to hold the rope so taut, but to let the rope go, in order that the limb might fall to the ground." The court refers to Hope v. Scranton & L. Coal Co., 120 App. Div. 595, 105 N. Y. Supp. 372, and says:

"The test of acts of superintendence is that unless the act itself is one of direction or of oversight, tending to control others and to vary their situation or action because of his direction, it cannot fairly be said to be one in the doing of which the person intrusted with superintendence is in the exercise of superintendence. Slackblower's superintendence consisted in designating the tree to be trimmed, but from aught that appears in the record this is all he did of direction or oversight."

In Heffron v. Lackawanna Steel Co., 194 N. Y. 598, 88 N. E. 1121, no opinion was written. Reference to the opinion below (121 App. Div. 35, 105 N. Y. Supp. 429) shows that one Lawrence was foreman of a gang of men at work on the third or "tapping" floor of a steel mill, and that he directed one of the workmen to remove one or two sets of planks from the floor to facilitate his work which was finished just before quitting time. When the work was completed, Lawrence told him he need not cover the hole again, and accordingly he left it uncovered. After an extended discussion, the court says:

"Unless a direction of this kind comes within the function of a superintendent, or one exercising an act of superintendence, the statute referred to is shorn of much of its efficiency. Many of the acts which formerly were held to be those of a fellow servant and related to a detail of the work have been eliminated from that category and come within the scope of superintendency by virtue of this act."

In Guilmartin v. Solvay Process Co., 189 N. Y. 490, 82 N. E. 725, an oiler was injured while repairing machinery under the direction of a shift foreman, who (although he had the power to do so) failed to stop the engine before repair work began, and himself joined with the other workmen in doing the work. The court reversed the Appellate Division holding that the foreman was acting as superintendent. It said:

"If the act be of that character (superintendence), the fact that it is a detail of the work will not relieve the master from liability. In the prosecution of many, if not most works, superintendence is a detail of the work in the accurate use of that term. It is often so denominated in the older cases and properly so, because before the statute it was unnecessary to distinguish between negligence of a superintendent and that of a colaborer of the same grade as that of the person injured, so far as any liability of the master was involved. The statute has changed this. * * * The question in any case

brought under the statute is not whether the negligent act is a detail of the work, but whether it is a detail of the superintendent's part of the work, or that of the subordinate employés and servants. In the present case had the foreman attempted to stop the engine himself, and so carelessly done the work as to cause injury to other employés, that might very well be deemed the negligence of a coservant for which the master would not be liable; but the determination of the question whether the machinery should be stopped before the men were put to work on it was of a very different character."

In the case now before us it does not appear that Otto had authority to stop the running shafting; but apparently he could have set plaintiff to work at a place remote from the live shaft and waited till noon hour before beginning work in dangerous proximity; and certainly he could have directed the staging to be erected where plaintiff could have done the very work he was set to do, without any risk from the revolving shaft.

In Andersen v. Pennsylvania Steel Co., 61 Misc. Rep. 504, 115 N. Y. Supp. 570, a so-called "pusher" who was doing work similar to that before us in Penn Steel Co. v. Lakkonen—August 1, 1910—(C. C. A.) 181 Fed. 325, was held to be acting as superintendent, and the case was affirmed, without opinion in 197 N. Y. 606, 91 N. E. 1109.

It seems unnecessary to refer to any other of the authorities cited They have all been examined, and in our opinion do not indicate that the state courts are inclined to give any narrower construction to this statute than the one above indicated.

The conclusion we have reached as to the status of Otto renders it unnecessary to examine the assignments of error predicated upon the judge's charge on that branch of the case. The statutory notice, which inter alia stated that the injuries were caused by the negligence of superintendent and foreman in directing him to work about the main line of shafting while it was in violent motion, seems to be sufficient. See our opinion in U. S. Gypsum Company v. Sliwienska, 183 Fed. 688, handed down to-day. We find no force in the other assignments of error as to admission of testimony.

There was evidence from which the jury might well infer that plaintiff had not fully recovered at the time of the trial and that it might be a long time before he fully recovered. The court told the jury that they could not award damages for permanent injuries in the absence of testimony that they were permanent. We think that was all defendant was entitled to.

Judgment affirmed.