### SHANLEY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. February 16, 1912.)

1. MASTER AND SERVANT (§ 279*)—ACTIONS FOR INJURIES—FELLOW SERVANT OR VICE PRINCIPAL—EVIDENCE.

Evidence in an action for the death of a sewer employé, employed by defendant city *held* to show that the employé in charge of decedent's gang was merely a foreman or leader of the gang in doing the particular job, and not a superintendent.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 279.*]

2. MASTER AND SERVANT (§ 182*)—MASTER'S LIABILITY—NEGLIGENCE OF SUPERINTENDENT—STATUTES.

An employer is not liable under the employer's liability act (Consol. Laws 1909, c. 31, §§ 200–204), relating to negligence of one intrusted with superintendence, where the work was such that he was not bound to furnish a superintendent.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 182.*]

3. MASTER AND SERVANT (§ 180½*)—MASTER'S LIABILITY—NEGLIGENCE OF FELLOW SERVANT.

An employer is not liable under the employer's liability act (Consol. Laws 1909, c. 31, §§ 200–204) for injuries caused by the negligence of a fellow servant performing the details of the work even where a competent superintendent is employed.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180½.*]

4. MASTER AND SERVANT (§ 182*)—MASTER'S LIABILITY—NEGLIGENCE OF SUPERINTENDENT.

Decedent was one of a gang of five men, directed to clear an obstruction from a sewer, and was drowned while in a manhole by the influx of water, which all of the men knew might happen. A gang boss or foreman was over the gang, but he engaged in the actual work with the others, and the ladder which might have enabled decedent to escape from the manhole was withdrawn at decedent's direction, he having appar-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ently taken charge of the attempt to clear the manhole. *Held*, that as no superintendent was necessary in view of the simple nature of the work, and as the gang foreman did not act as superintendent in doing the work, the city was not liable under the employer's liability act (Consol. Laws 1909, c. 31, §§ 200–204) on the ground that decedent's death was caused by the negligence of one intrusted with superintendence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

Appeal from Trial Term, Kings County.

Action by Bridget Shanley, as administratrix of James Shanley, deceased, against the City of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

James D. Bell (Frank Julian Price, on the brief), for appellant. Robert H. Roy, for respondent.

WOODWARD, J. Plaintiff's intestate was one of a gang of five men sent out by the defendant on the afternoon of November 24, 1909, to clear an obstruction from one of the sewers at Frost street and Graham avenue, in the borough of Brooklyn. While he was in the manhole manipulating a rod for the purpose of removing the obstruction which had caused the sewage to back up into the cellars in that locality, a sudden rush of waters came upon him, and, after several futile attempts on the part of those who were at hand to rescue him, he was overcome and drowned. This action is predicated upon the alleged negligence of the superintendent of this work under the provisions of the employer's liability act (Consol. Laws 1909, c. 31, §§ 200–204), and the most important question (for there is no other possible ground of liability) is whether the foreman of this gang of men sent out to do an isolated piece of work in clearing out an obstruction in a sewer pipe was "intrusted with and exercising superintendence, whose sole or principal duty is that of superintendence, or, in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer." The jury has found a verdict in favor of the plaintiff, and, if this foreman was in fact a superintendent within the meaning of the employer's liability act, it would go a long way to support the judgment.

The learned counsel for the respondent asserts that "there can be no question that Lowery had been appointed foreman of the gang," but no evidence is pointed out to show that the defendant had ever appointed him as foreman. However this may be, there is a distinction between a mere foreman or leader of a gang of men, and a superintendent such as is described in the act here under consideration. Abrahamson v. General Supply & Construction Co., 112 App. Div 318, 98 N. Y. Supp. 596. Upon the question of superintendence, the learned counsel for the respondent calls attention to the testimony of Lowery that "I ordered the ladder down right away to him, and the water came to about here on him; when I ordered the ladder to be

taken to him, I kept my eyes on him"; to the testimony of Higgins, the general foreman in the sewer department, who was not present at the time of the accident, that "one man was designated over each gang sent out"; to the testimony of Tuffey, one of the workmen in the gang, that "Mr. Lowery had charge of the gang"; to the testimony of Graham, another member of the gang, that "Mr. Lowery was foreman of that gang"; and to the testimony of Hickey, another workman, that "Lowery was the foreman in charge." This is the entire testimony to which attention is called as tending to support the respondent's first point, that "Lowery was a superintendent within the meaning of the employer's liability act." Mr. Higgins, who says he was the "foreman over the gang of men sent out to clean the sewers" under the Bureau of Sewers, does not say that Lowery was a foreman. He merely says:

"One man was designated over each gang sent out. Lowery did not receive any more pay than any of the other men employed with him in that gang. I know that Lowery did the actual work with the other men of cleaning out the sewers. It is a fact that Lowery himself would go into the holes and rod these places."

Lowery himself says:

"When I arrived there, I went down the first manhole myself, and I took a small bulk out of it. * * * I often went down these manholes myself at times—always did. It was part of my duty when I went out, part of my duty, the same as any of the rest of them. I had been working for the sewer department before this accident a little over 11 years."

John J. Graham, one of the gang, says:

"The work Lowery did was to go down in the hole the same as the other men. That was his business to rod holes, him and Mr. Shanley [plaintiff's intestate]."

There is not a suggestion anywhere in the testimony that the city of New York, either by any of its officials or by any one charged with the duty of superintending the sewers, had ever even appointed, or knew of the appointment of, Lowery as a foreman, much less to the position of a superintendent. Inferentially the testimony indicates that Mr. Higgins, who says, "I was acting foreman of the repair yard, bureau of sewers; I was foreman over the gang of men sent out to clean the sewers," had "designated" Lowery as being "over" the particular gang sent out to do this work, but this is the nearest approach to any testimony showing authority in Lowery, with the exception of the testimony of some of his fellow laborers, that Lowery was the foreman in charge of this gang.

[1] It looks very much as though the probative evidence went no further than to show that Lowery was designated as being "over" this particular gang of men in the performance of this single job, not by a superintendent, but by one who claimed no higher authority than that of a foreman. The job itself was of such a character that it did not require the employment of a superintendent. The master could intrust the work to competent fellow servants, for it involved no difficult problems in the ordinary sense. It was merely going down into a manhole connecting with a sewer pipe and running a long rod through the pipe in the effort to dislodge the obstruction, and, while

in this particular instance there was a body of water back of the obstruction which resulted in a tragedy, the fact was well known to all of the men who were engaged in the work, and plaintiff's intestate had had more than a year of experience in this line of work, and all of those who were there appear to have been familiar with the details of the work and knew just what to do. There is nothing suggested as being necessary to this work which any man of ordinary intelligence could not perform as well alone as under the direction of a superintendent, and there is absolutely no evidence in the case to show that any one of the fellow servants was not competent.

[2, 3] Where the work is such that the master owes no duty of furnishing a superintendent as a part of the corps of competent fellow servants, or if he has furnished a competent superintendent and the accident happened through no neglect of 'such superintendent, but through the error or neglect of a fellow servant engaged in the carrying out of the details of the work, there can be no liability under the employer's liability act. Abrahamson v. General Supply & Construction Company, supra. Here there is no evidence that a superintendent was employed, no evidence from which the necessity or justification for the employment of a superintendent can be spelled out, and it cannot be presumed, in the absence of such evidence, that the defendant would employ a superintendent for this simple work. This is not the case of a man being sent into a dangerous situation by one of superior authority upon an implied assurance that the place is safe, for it clearly appears from the undisputed evidence that Lowery himself offered to go into the hole, but was overruled by plaintiff's intestate. Lowery testifies that, after going into the first manhole himself, "I came up, and we went up to the second manhole, and it was up with about six feet of water, and we put the rods on with a three-prong grappler, and tried to break it from the top, and I told Shanley we would have to go down and rod it, and he said, 'I will go down,' and I said, 'Jim, you better let me go down;' and he said, 'No; you are down often enough.'" Lowery is corroborated in this by one other witness, and it is not disputed, so that it clearly appears that plaintiff's intestate made the choice of who should go down into the hole, and the strongest evidence in the case appears to be that Shanley directed that the ladder, on which he had descended to the bottom, should be withdrawn from the hole. It thus appears that Shanley, an experienced man, not only elected to go into this hole, knowing all of the surroundings, but that he himself directed the removal of the ladder, which would have enabled him to escape.

There was great confusion in the evidence as to just what occurred after the rush of waters began. It is apparent that witnesses on either side of the controversy were greatly excited, and that their recollection of events in their sequence is not at all clear, but the great weight of probable evidence is against the theory on which the plaintiff has recovered. The fellow servants of Shanley, while disagreeing as to some of the details, appear to have been immediately present, and to have been attentive to the details of the work, all of them participating, without orders or instructions from any one, and, as we have already pointed out, there is an utter lack of evidence to estab-

lish that Lowery was a superintendent within the meaning of the employer's liability act. The master had supplied all of the appliances shown to be reasonably necessary for the work. To have bags filled with sand or manure was not necessary, for the evidence was that there were no breaks in the pipes, and these contrivances were only employed to stop leaks, while the sole object of the employment at the point of the accident was to open the sewer and let the flood waters run through. The fellow servants were not shown to be incompetent in any regard, and the master, having supplied the proper tools and appliances and competent fellow servants, was not bound to provide a superintendent to see that these tools and appliances were placed in the most advantageous position to be available in the event of an accident, or to hold competent fellow servants to a point of immediate attention in anticipation of an accident, which, in the ordinary course of events, was not to be expected, for the evidence does not disclose that the work was ordinarily of a hazardous kind, however unpleasant it might be.

[4] There being no occasion for a superintendent, there being nothing in the work requiring anything more than competent fellow servants in its performance, and there having been no assumption of authority on the part of Lowery, who appears to have given way to Shanley, this judgment cannot be supported on the authority of any previous adjudication or by any legislative enactment.

The judgment and order should be reversed and a new trial granted, costs to abide the event. All concur.