HEILIG v. BURNS et al.

(Supreme Court, Appellate Division, Fourth Department.　July 6, 1909.)

1. MASTER AND SERVANT (§ 135*)—INJURIES TO SERVANT—NEGLIGENCE—METH-
OD OF WORK.

Where there were three methods of performing the work in hand at
the time plaintiff was injured, and the method employed was in common
use, and would have operated with safety if properly proceeded with,
the master was not negligent in failing to employ a different method,
under the rule that he was not required to use the best method known.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 271,
281, 293; Dec. Dig. § 135.*]

2. MASTER AND SERVANT (§ 279*)—INJURIES TO SERVANT—PROXIMATE CAUSE—
EVIDENCE.

In an action for injuries to a servant by the fall of a timber from a
trestle as it was being moved by cant hooks with the aid of a dolly,
evidence *held* to show that the fall of the timber was not caused by the
method by which it was being moved, but because of the negligence of
plaintiff's co-employés in failing to have the hooks securely fastened in
the timber, or in failing to have a firm hold on the handles of the hook.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 979;
Dec. Dig. § 279.*]

Kruse, J., dissenting.

Appeal from Trial Term, Oswego County.

Action by Edward Heilig against William J. Burns, impleaded with
the Delaware, Lackawanna & Western Railroad Company.　From a
judgment for plaintiff for $3,500 damages and $116.50 costs, entered
against defendant Burns alone, and from an order denying his motion
for a new trial on the minutes, he appeals.　Reversed.

The action was commenced on the 7th day of April, 1908, against both de-
fendants jointly to recover damages resulting from bodily injuries sustained
by the plaintiff, alleged to have been caused solely through their negligence.
During the trial an order was made dismissing the complaint as to the defend-
ant Delaware, Lackawanna & Western Railroad Company (from which no
appeal is taken), and the trial proceeded against the defendant Burns, with
the result stated.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Elisha B. Powell, for appellant.

D. B. Morehouse, for respondent.

McLENNAN, P. J. The action is brought under the employer's li-
ability act (Laws 1902, p. 1748, c. 600).　The accident from which
plaintiff's injuries resulted occurred on the 22d day of January, 1908,
at about 11 o'clock a. m.　At the time he was in the employ of the de-
fendant Burns, engaged in operating a gasoline engine, which was
located in a small shanty, erected to protect it and him from the
weather.　While the plaintiff was in the shanty attending to his duties,
a timber fell from the deck of a large coal trestle, which Burns was
building for the Delaware, Lackawanna & Western Railroad Company
in the city of Oswego, N. Y., through the roof of the shanty, strik-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing the plaintiff, and causing the injuries for which he seeks to recover. It is not claimed that the plaintiff was guilty of contributory negligence, and only two questions need be considered upon this appeal: (1) Was the defendant Burns guilty of such negligence as to render him liable under the employer's liability act? (2) Did the notice which was served upon Burns by the plaintiff comply with the requirements of section 2 of such act?

The coal trestle which Burns was erecting extended in a northerly and southerly direction. The main part of the structure, where the bins were to be located, was 200 feet long, 40 feet wide, and the deck, so called, was about 20 feet from the ground, and from it, on an easy and regular grade, an approach or incline extended northerly to Utica street, where the tracks of the company's railroad were located, and over such incline, when completed, its cars were to pass in delivering coal to the trestle. At the time of the accident two pairs of stringers had been laid upon bents about 12 feet apart, and extended practically from the foot of the incline along the structure for its entire length. Such stringers were made of timbers 8 inches wide and 14 inches deep, two of them being bolted together, so as to break joints, thus making a continuous stringer 16 inches wide, on top and bottom, and 14 inches deep. The upper surface of such stringers was smooth, and from the top of the incline for the entire length of the trestle proper they were laid perfectly level, and so that one would be under each rail of the two railroad tracks which were to be built. There was an open space of 3 feet 2 inches in width between the stringers composing each pair, and on the top of them ties were to be laid, consisting of timbers 8 inches square and 9 feet long, made of Georgia pine and weighing about 200 pounds each, which had to be taken from the ground and placed upon the top of the incline and deck of the trestle. To facilitate the doing of such work, and for the purpose of raising other timbers, the engine which the plaintiff was operating had been installed under the structure, at about the point where the incline connected with the deck of the trestle proper. By means of such engine and other appliances connected therewith a number of ties had been raised from the ground and piled on the easterly pair of stringers at a point on the trestle about 100 feet southerly from the top of the incline, and three employés, each of whom had experience in handling timbers on similar structures, were directed by the foreman or superintendent of the defendant to move such ties to a point just south of where the incline joined the trestle proper and place them upon some boards, where they would be accessible to the carpenters, who were putting them in place. At the point where the incline and deck joined, the end of one of the timbers forming the stringer at the top of the incline projected 1½ inches above the end of the corresponding timber in the stringer on the deck of the trestle; but this point was not within the space over which the ties were directed to be moved.

In carrying out their instructions the men placed one of the ties, of the dimensions and weight stated, upon what is called a "dolly," which consists of a wheel 14 inches wide and 6 inches in diameter, with a platform on top about 18 inches square. Being thus loaded

with one tie, the "dolly" was started northerly on the easterly string-er (which was perfectly level and, as we have seen, formed a walk 16 inches wide) towards the incline, where the tie was to be put in place by the carpenters. One of the men was in front of the tie, hav-ing hold of it with what is called a double timber hook, holding in his hands one end of the handle, the other end resting upon the timber, which formed a lever by which the hooks could be drawn into it, and he was necessarily walking backwards on the stringer. Another man, with a like timber hook, which was handled in the same manner, had hold of the other end of the tie and was following on the same string-er. The third employé was not aiding in moving the timber, but ap-parently was bossing the job of conveying the railroad tie, which only weighed 200 pounds, a distance of 100 feet, upon a perfectly level walk 16 inches wide, and there was another stringer or walk parallel to and exactly like it only 3½ feet distant. It appears that the tie was icy, the work being done in the winter time, and that the stringers, from like cause, were more or less slippery. Instead of stopping the "dolly" at the point where the tie should have been unloaded in order to place it upon the boards as directed, which were southerly from the top of the incline, the "dolly" was permitted to proceed until the wheel struck the projection, to which attention has been called, the jar swung the timber around, the two men lost hold of it, and it fell down from the deck of the trestle, through the roof of the shanty where the plain-tiff was working, and it, or portions of the roof, struck him and caused the injuries for which he complains.

It appears that, while no direction was given by defendant's foreman as to the method which should be employed in moving the ties in ques-tion, he knew, as did the defendant Burns, that in the erection of the structure the employés were accustomed to move like timbers on the deck of the trestle by means of a "dolly" and in the same manner as the tie which fell was being moved; but in moving like timbers by such method in the erection of the structure in question, which had occupied several weeks, no accident had occurred. It appears that it was a common and usual method, and one which had been in vogue a great number of years. Of course, no witness testified that he had seen it used under exactly similar conditions, to wit, when the timber to be moved was icy, and when the stringer was 16 inches wide, was slip-pery, and 20 feet above the ground. Witnesses testified that if the tie had been placed across the easterly pair of stringers, a rope attach-ed to each end, two men (one walking on each) by pulling the ropes could have moved it safely. It is apparent that such method would be absolutely safe if the two men pulled even; otherwise, not. Other wit-nesses testified that a better method would be to have employed four men to carry the stick, each two provided with a double-handled tim-ber hook, two of them walking backwards, one on each stringer, and the other two following. Undoubtedly such method would be safe, unless one of the men stumbled, or the hooks in some manner became loosened, in which case the timber, of course, would fall to the ground. Undoubtedly an employé who was reasonably strong could have car-ried the timber in question on his shoulder with perfect safety in case he did not slip or stumble. If he did, the tie would fall as in this case.

Under such state of facts, was the defendant Burns guilty of actionable negligence?

It is not claimed by the respondent that the defendant was negligent because of any failure to provide proper and suitable appliances for carrying the tie. It was conceded on the trial that sufficient and proper timber hooks were furnished. No suggestion is made that the engine which the plaintiff was operating was improperly located. Neither is it urged that it, and the engineer, should have been protected by a stronger or more substantial shanty. It is not claimed that any part of the trestle proper, or of the incline, was defective, improperly constructed, or unsuitable for the purposes intended. The sole claim now is that the defendant was guilty of negligence because he permitted the tie in question to be moved by means of a "dolly" under the conditions which existed. It is claimed that he ought to have seen to it that it was moved by one of the other methods referred to, or by some method other than by which it was moved. This was the only question submitted to the jury by the learned trial court. The court said:

"Was the defendant negligent in not providing a reasonably safe place to work because of the fact of the method of handling timbers which was employed on this occasion and which in fact did result in the falling of the timber and the injury to the plaintiff?"

No other question was submitted. Every other issue raised, either by pleadings or upon the trial, was eliminated. The jury found in favor of the plaintiff upon the single question so submitted. We think such finding is clearly contrary to and against the weight of the evidence. Two men, experienced in handling timbers, were engaged in carrying a square stick which weighed only 200 pounds. They were provided with proper and suitable timber hooks; and it is perfectly apparent that if each had securely fastened one of the two hooks comprising the double timber hook which he was handling into the sides of the tie, rested one end of the handle upon the timber, and held the other firmly in his hand, it would have been moved in perfect safety, and could not have fallen, unless one or other of the men had slipped or stumbled, which did not occur in this case. The tie fell because the hooks were not properly or securely fastened into it, or because one or both of the men, each of whom was only carrying a weight of 100 pounds, did not have a firm hold of the handle. It is not claimed that there was sufficient ice on the tie to prevent the hooks from penetrating through it and being fastened solidly in the wood. No inconvenience was experienced by the men in walking upon the stringer, which, as we have seen, formed a perfectly level walk 16 inches wide. Neither of them even slipped because of its alleged slippery condition.

The only purpose of the "dolly" was to relieve the men from carrying the full weight of the tie. It did not aid in guiding the stick, or affect the speed at which it was being moved. All that was regulated by the two men by means of the hooks handled by them. The slippery condition of the tie or the stringer did not, so far as appears, interfere in the slightest degree with the movement of the "dolly." It had been moved 100 feet safely and without mishap, until the men ran it be-

yond the point where they were directed to deposit the tie and against the 1½-inch projection, to which attention has been called; but, even when they had thus negligently permitted the "dolly" to strike such projection, it is perfectly evident that the tie would not have fallen if the two men had had their respective hooks securely fastened into it and had a firm hold of the handles.

The evidence very clearly demonstrates that the accident resulted, not because an unsafe and dangerous method was employed to move the tie in question, but because of the negligence of one or both of the two men engaged in the work by failing to have the four hooks securely fastened into the timber, or because they failed to have a firm hold of the handles of such hooks; both of them being concededly co-employés of plaintiff, and for their negligence it is not claimed defendant is liable. If the hooks had been thus fastened into the timber, and each man had a firm hold of the handle of his timber hook, they could easily have held the stick, which only, as we have seen, made a weight of 100 pounds for each, notwithstanding the jarring or sluing of the "dolly" by reason of its having been run against the projection. The evidence does not support the finding that the method employed to move the tie in question was not reasonably safe, or that the accident resulted because of the employment of such method. The suggestion that the tie could have been more safely moved by four men, two carrying each end, two walking backwards and the other two following, is the merest speculation. By that method it would have been moved safely if the hooks had all held and none of the men had slipped or fallen; and the same is true of the method which was employed. It was not a stick of such heft as required four men to handle it. It was a light load for two men. The same may be said of the other method suggested, that the tie ought to have been placed across two stringers and slid along for a distance of 100 feet by means of ropes and without using any hooks at all. If the tie and stringers were slippery, it is quite evident that such method would be attended by greater danger than the method which was employed; but it must be borne in mind that as the case was finally submitted to the jury there was no suggestion or claim that the defendant is liable because of the existence of the projection, because of failure to furnish proper hooks or appliances, because of the location of the shanty, or because it was not properly constructed and so as to more adequately protect the engineer. As we have seen, the sole and only question submitted to the jury was:

"Was the defendant negligent in not providing a reasonably safe place to work because of the fact of the method of handling timbers which was employed on this occasion, and which in fact did result in the falling of the timber and the injury to the plaintiff?"

The most that can be said from the evidence is that the three methods for moving timbers like the one in question are well known, were in common use, and were frequently employed under conditions similar to those which existed here, and that a timber of the character of one which fell could be moved with perfect safety by either method if the men engaged in moving it were reasonably cautious in the per-

formance of their work and did not meet with the accident which would cause them to release their hold or lose control of the tie. Under such circumstances, an employer is not required to use the very best method known, but only such as is ordinarily employed and is reasonably safe. As before suggested, it is concluded that the finding of the jury that the defendant was negligent because of the employment of the method described, to wit, the use of the "dolly," is contrary to and against the weight of the evidence.

Both counsel assert in their respective briefs that the action is brought under the employer's liability act and it was tried and submitted to the jury upon that theory. It was, therefore, incumbent upon the plaintiff to prove that a notice, which complied with the requirements of section 2 of the act, had been served upon the defendant Burns. A notice, signed and verified by the plaintiff and dated on the 5th day of March, 1908, the accident having occurred on the 22d day of January previous, was served on the defendant Burns. It stated the time and place of the accident and fully complied with the requirements of the statute in that regard. As to the "cause of injury" required by the statute to be stated, the plaintiff, in the notice served, said:

"That in the course of my employment I was required to be in and underneath said trestle, in a shanty or shed provided, among other purposes, for the doing of my work and the protection of myself and said engine; that on said day and at said place, at about 11 o'clock a. m., a large heavy timber, about nine feet long, fell or was thrown or precipitated down through the roof of said shed or shanty, where I was employed, and without any notice or warning to me said timber and the roof materials of which said shanty was constructed struck me in the back above my hips and very grievously bruised and injured me in the manner hereinafter stated."

Those are the only words contained in the notice served which in any manner relate to the cause of the injury. It will be observed that such notice does not in any manner inform the defendant of any act or omission on his part which it is claimed constituted negligence and for which he was liable to the plaintiff. For aught that appears, the timber may have fallen from the trestle without the fault of the defendant or any of his employés, by some agency over which he had no control, and for aught that appears it may have been thrown from the trestle by a third party, one in no manner connected with the defendant. Whether it fell because of defects in the condition of the works, ways, or machinery connected with or used in the business of the defendant, or whether it fell by reason of the negligence of a person in his employ intrusted with and exercising acts of superintendence, does not appear. In fact, as will be observed, the notice does not allege that the timber which injured the plaintiff fell because of the negligence of anybody.

We think it clear that such a notice does not comply with the provision of the statute, which requires that the "cause of injury" must be stated. In the case of Galino v. Fleischmann Realty & Construction Company, 130 App. Div. 605, 115 N. Y. Supp. 334, the court said:

"The purpose of a notice served under the employer's liability act is to acquaint the employer with the particular negligent act for which it is proposed to hold him liable, and thus enable him to make the necessary inquiries,

so that he can settle the claim without action, or, if action be brought, properly present his defense."

In that case the notice was much more specific than here. It stated that the injuries were caused by the defendant's negligence, in that it failed—

"to furnish me with a reasonably safe place and appliances in and with which to do the work, and failed to reasonably safeguard, inspect, and keep safe the place and appliances with which I was directed to work, and failed to furnish me with proper and reasonably safe ways, works, and machinery, and in that you knowingly employed and retained incompetent foremen and co-workmen to guide, direct, and assist me in the performance of my work, and failed to formulate, promulgate, and enforce proper rules and regulations for my safety and the safety of said co-employés, as a result of all of which I was caused and permitted to fall, and material fell upon me, and I sustained the injuries as aforesaid."

The court in that case unanimously held that the notice was insufficient, for the reason, as is stated:

"From this notice the defendant could gain no information as to the particular act of negligence of which the plaintiff complained."

In the case of Barry v. Derby Desk Company, 121 App. Div. 810, 106 N. Y. Supp. 575, the notice was as follows:

"Your negligence in failing to furnish me with a safe, proper, and suitable place to perform the work which I was engaged to do by you, and in failing to furnish me with competent fellow employés."

It was held that such notice did not comply with the requirements of the act, for the reason, as stated:

"Under such a notice as this, no one could possibly determine just what accident or incident caused the plaintiff's injury, which, as the evidence shows, was the breaking of a scaffold plank. What the plaintiff has given notice of is, not the cause of his injury, but the cause of that cause. This, as I consider, was not a substantial compliance with the statute."

The headnote in that case is as follows:

"The purpose of the notice, stating the 'time, place, and cause' of an injury, required by section 2 of the employer's liability act, is to acquaint the defendant with the particular negligent acts for which it is intended to hold him liable, so that he may prepare his defense."

See, also, Finnigan v. New York Contracting Company, 122 App. Div. 712, 107 N. Y. Supp. 855. It was there held that the requirement that a notice must be served stating the "cause of injury" is intended "to put the employer in possession of the particular negligent acts which caused the injury, so as to enable him to investigate." This case was affirmed by the Court of Appeals, 194 N. Y. 244, 87 N. E. 424, and in the opinion, written by Judge Hiscock, the court considers the whole question and very clearly shows how the requirement of the statute should be construed. The conclusions reached in that case are stated very concisely in the headnote. It is said:

"Notice in stating the cause of the injury should, with reasonable definiteness and completeness, in however informal, and inartistic manner, indicate the negligent or wrongful misconduct of the employer really claimed to have been the cause of the accident and really relied on as the basis of the complaint against him, that he may by virtue of such seasonable notice investi-

gate and prepare to defend against the charge thereafter actually to be prosecuted."

It cannot be claimed, we think, that the notice in the case at bar complied in any sense with the rule thus stated. As we have said, the notice in this case does not in any manner, inartistically or otherwise, indicate—

"the negligent or wrongful misconduct of the employer [Burns] really claimed to have been the cause of the accident and really relied on as the basis of the complaint against him."

It simply states that a heavy timber about nine feet long fell from the trestle through the roof of the shanty in which plaintiff was employed. In the Finnigan Case, last cited, it is also held:

"An entire failure to give substantial information required by the statute cannot be overlooked on the theory of knowledge acquired, or which might have been acquired, by the employer in some other way."

It is concluded that the notice did not comply with the requirements of section 2 of the employer's liability act, that it was void, and for that reason the judgment must be reversed, as well as for the reason that the finding of the jury that the defendant Burns was guilty of negligence because of the method adopted by him in moving the timber in question is contrary to and against the weight of the evidence.

Judgment and order reversed, on the law and the facts, and new trial ordered, with costs to appellant to abide event.

SPRING, WILLIAMS, and ROBSON, JJ., vote for reversal only upon the first ground stated in the opinion. KRUSE, J., dissents in a memorandum, and votes for affirmance.

KRUSE, J. (dissenting). The plaintiff in his notice states that the injuries resulted from the throwing, or suffering to be thrown, or falling of a heavy timber through the roof of the shed where he was required to work, giving the time and place and minutely describing the timber which struck him. I think it is a sufficient statement to comply with the employer's liability act, especially in view of the undisputed fact that the defendant was fully informed as to the precise nature of the accident and was not misled.

But, even if the notice is not sufficient, I think the verdict should be upheld. It appears that the injured person was put at work immediately underneath where these ties were being moved. The ties were put on a so-called "dolly," consisting of a single roller and hauled up an inclined passageway but 16 inches wide, being guided and moved with cant hooks. There was ice and snow on the roller and the passageway, as well as the ties. I think the evidence shows that it was not merely the slipping of the cant hooks which caused the accident, but the slipping of the tie, and very likely, if the men had held on, one or more of them would have been precipitated to the ground with the tie.

It requires no extended argument, it seems to me, to show that such a practice is dangerous, and the jury could well find that the defendant was not reasonably careful or regardful of the safety of the plaintiff;

that it exposed him to unnecessary peril. He was not warned, and did not know the danger to which he was exposed. I think it was not necessary to serve any notice, as the facts alleged in the complaint and the evidence given upon the trial establish actionable negligence against the defendant, without the aid of the statute, and the allegations regarding the notice may be entirely disregarded as surplusage.

I vote for affirmance.