PENNSYLVANIA STEEL CO. v. LAKKONEN.

(Circuit Court of Appeals, Second Circuit. August 1, 1910.)

No. 308.

1. MASTER AND SERVANT (§ 182*)—DEATH OF SERVANT—EMPLOYER'S LIABILITY ACT—"SUPERINTENDENCE."

The person in charge of a particular piece of work as a subforeman or pusher is a person engaged in superintendence within the New York employer's liability act (Laws 1902, c. 600), making the master liable for injuries to servants caused by the negligence of a superintendent or a person exercising superintendence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*

For other definitions, see Words and Phrases, vol. 7, pp. 6791–6792.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. **MASTER AND SERVANT** (§ 286*)—**DEATH OF SERVANT—NEGLIGENCE OF SUPER-INTENDENT—QUESTION FOR JURY.**

In an action for the death of a servant by being struck by a falling iron saucer used in the erection of bridge beams, whether the subforeman in charge of the work was negligent in pulling out the pin attached to the fall before the saucer had been taken off *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1032–1035; Dec. Dig. § 286.*]

3. **COURTS** (§ 366*) — **FEDERAL COURTS — RULES OF DECISION — DECISION OF HIGHEST STATE COURT.**

Where the sufficiency of the notice of a servant's injury served on the master depended on the construction to be given to the New York employer's liability act (N. Y. Laws 1902, c. 600), pursuant to which the notice was served, that construction of the statute approved by the New York court of last resort would be followed in the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–968; Dec. Dig. § 366.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

4. **MASTER AND SERVANT** (§ 252*)—**EMPLOYER'S LIABILITY ACT—NOTICE.**

New York Employer's Liability Act (N. Y. Laws 1902, c. 600) § 2, provides that an action thereunder for injuries to a servant cannot be maintained unless notice of the time, place, and cause of the injury is given to the employer within 120 days. *Held*, that where a notice gave the time and place of decedent's injury, and stated that the cause was his being struck by a large piece of iron which fell on him from above the place where he was working while performing his duties pursuant to directions by reason of the negligence of the superintendent or person acting as superintendent in failing to exercise reasonable care, diligence, and prudence in the premises, it was sufficient, though it also stated that the superintendent was negligent in furnishing deceased with an improper and unsafe appliance, tool, and instrument about his work, and directing the use of it, which assignment was thereafter abandoned.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

In Error to the Circuit Court of the United States for the Eastern District of New York.

Action by Hilta Lakkonen, as administratrix of the goods and chattels of Alexander Lakkonen, deceased, against the Pennsylvania Steel Company, to recover damages resulting from the death of her husband, alleged to have been caused by defendant's negligence. From a judgment for plaintiff, defendant brings error. Affirmed.

Battle & Marshall (H. S. Marshall, of counsel), for plaintiff in error.

H. Powell and Jacob C. Brand (John B. Stanchfield and M. Spencer Bevins, of counsel), for defendant in error.

LACOMBE, Circuit Judge. The action is brought under the employer's liability act of the state of New York (Laws 1902, c. 600). Decedent was on the day in question in the employ of the steel company, which was erecting the Blackwell's Island bridge and was working under the charge of a subforeman or "pusher" named Drummond. He was working at the bottom of a post constructed of plates riveted together with lacings on the sides. These posts would be put in place by putting a pin through a hole at one end, connecting the tackle of a

derrick with the pin and lifting the post to a proper position. This post had thus been put in place and the next step was to remove the lifting pin, which was still in the post and attached to the block and fall. The pin was 14 to 16 inches in diameter about 3½ feet long, and was held in place with a washer or saucer on each end of it. The washer weighs 40 to 60 pounds, is fastened on to a bolt or rod which runs through pin and washer and projects beyond the washer, the latter being kept in place by a nut which is screwed on the end of the bolt. To remove the pin, it was necessary first to unscrew the nut and take off the washer. In removing the pin from the post, the washer was permitted to fall to the ground a distance of about 40 feet. It struck Lakkonen and killed him. James Headrich was the general foreman of the work in question, having under him Drummond and other pushers. The state courts have held that a pusher such as Drummond is a superintendent within the meaning of the act. Drummond told two of the men under him, Peterson and Davis, to go up the post and get the pin out. He went up with them himself, and was at the top of the post when the accident happened. His narrative of what took place there is as follows:

"The pin was already fastened to the fall as it hadn't been disturbed from the day the post was connected; and, it being there was a strain on the fall, I had him (apparently the winchman) slacken off to release the strain—I had to pull the pin a little one side to drop it on the bolt that went through the center. There was play enough to allow two inches (of side movement). By so doing it would leave a space big enough for a man to get both hands in—for two men to get each one hand in to hold the saucer. I gave a signal to go ahead on the fall—intending to stop him when he got the weight of the pin so that I could move it either way. The engine went ahead. The first time he went ahead so far that I had to make him lower again. He lowered so much that I had to make him go ahead again; and between the time I had given the signal and got the answer to my signal the nut was taken off, and when the strain came on the fall the pin floated south and the saucer fell. I had not seen Davis take this nut off—I looked over the side before I gave the signal to go ahead with the fall and the nut was out—I saw the nut and the saucer—Davis was leaning sideways. His hands were straight in towards the column or ought to be. I couldn't see just where they were, and I didn't know whether he had hold of the nut or not. I couldn't say."

The defendant contends that there is not sufficient proof of negligence on Drummond's part and that the accident was plainly due to the negligence of Davis, who was a fellow servant with deceased. The plaintiff contends that Drummond was negligent because he had given directions to Davis to remove the nut, and ought to have realized that between the time when he gave such directions and the time when he moved the pin it was to be expected that Davis would have unscrewed the nut; also, that it was the usual practice to begin operations for removing the pin by unscrewing the nut, and, if Drummond wished on this occasion first to shift the pin far enough to clear the bolt, he should have cautioned Davis not to take off the nut until he gave further orders. It is evident that some little time elapsed while Drummond was signaling to the engine man and trying to shift the pin, so as to bring the bolt into the hole. The following excerpts from the testimony are relied upon, Drummond testified:

"In the doing of my work it was always customary before I started to remove the pin to have the nut taken off—to take off the nut before I moved the pin providing the pin was in good condition that I could take the nut and saucer off safely; but, being in this case it wasn't in a safe condition, it was my place to move the pin first. I went up to take the pin out. When I went up there I told Davis it would be his job to take the nut off, but I didn't mention the time."

Davis testifies:

"It was our intention to work the pin out through the hole far enough so that we could lash on to the center of it, so that, when we lowered the pin down, it wouldn't slip through the cling. Well, we worked it out through the hole far enough so that the washer came up against the outside of the post, and then it was necessary to take the nut off in order to get the washer off, or to get the pin out through the hole any further, and Drummond said to me, 'We will take the nut off,' and I took the nut off and laid it down on the separator that is right at the top of the post; and I was straightening up to reach around to get hold of the saucer, expecting somebody to help me get it when the pin went out through the hole. I didn't have time to catch it. Q. When did Drummond tell you to take the nut off? Did he say to you to take it off, or that it would be your business to take the nut off? A. I believe he said, 'We will take the nut off now,' meaning for me to take it off.'"

Peterson testified:

"Q. Was it customary to start to pull this pin out before the saucer or washer had been taken off? A. Well, the washer was supposed to be taken off before we started. That was the way they had conducted the business before. In other words, the first of all they take off the nut, and then the washers, and then start the traveler moving. While I was on the column with Davis and Drummond, I heard Drummond say to Davis, 'Take the nut off.'"

Upon the testimony as it stood at the close of the trial plaintiff was entitled to go to the jury on the question whether any negligence on the part of Drummond was a cause of the accident.

Section 2 of the statute under which the action is brought provides that such action cannot be maintained unless "notice of the time, place and cause of the injury is given to the employer within one hundred and twenty days." The notice in this case which was duly signed and served reads as follows:

"Please take notice: That I have a claim against you for damages sustained by me as administratrix of the goods, chattels, and credits of Alexander Lakkonen, deceased, for the death of said decedent, caused by reason of your carelessness and negligence while in your employ on or about the 22nd day of July, 1907, at about 8:50 a. m., at about and between the foot of E. 59th street and the foot of E. 60th street, in the Borough of Manhattan, city of New York.

"That such injuries and resulting death were caused by said decedent being struck by a large piece of iron which fell upon him from above the place where he was working, while he was performing his duties upon and about the new Blackwell's Island bridge, at the place above mentioned, pursuant to your directions.

"Such occurrence was caused:

"1st. By reason of your negligence, and the negligence of a person in your service and intrusted with and exercising superintendence, and by reason of the negligence of a person with your authority and consent acting as superintendent, in the absence of such superintendent, in furnishing to said deceased an improper and unsafe appliance, tool and implement in and about his work at the above named place, and in directing the said deceased to use the same.

"2d. By reason of your negligence, and the negligence of a person in your service and intrusted with and exercising superintendence and by reason of a person with your authority and consent acting as superintendent in the absence of such superintendent, in failing to exercise reasonable diligence, care, and prudence in the premises."

As was said in a recent decision of the New York Court of Appeals (Logerto v. Central Building Co., 198 N. Y. 390, 91 N. E. 783):

"The statute contemplates that notice be given by the party injured or by some one on his behalf. Therefore the statement of the accident should not be required to conform to any higher standard than that which might be expected from an illiterate person."

The same court has also held that, by this provision, "the Legislature intended that the notice in stating the cause of the injury should with reasonable definiteness and completeness, in however informal and inartistic a manner, indicate the negligent or wrongful misconduct of the employer really claimed to have been the cause of the accident and really relied on as the basis of the complaint against him, and this manifestly that he might by virtue of said seasonable notice investigate and prepare to defend against the charge thereafter actually to be prosecuted." Finnigan v. N. Y. Contracting Co., 194 N. Y. 244, 87 N. E. 424, 21 L. R. A. (N. S.) 233.

The notice above quoted gives the time and place, and states that the cause of the injury was being struck by a large piece of iron which fell upon deceased from above the place where he was working, while performing his duties, pursuant to directions, the fall being occasioned by reason of the negligence of a superintendent or a person acting as superintendent in failing to exercise reasonable diligence, care, and prudence in the premises. This certainly states the cause of the injury, to wit, the fall of the large piece of iron from above at the place where he was put to work, and indicates that the cause of the accident was the negligence of a superintendent or an acting superintendent. With such a notice as this there certainly should be no difficulty in investigating the charge and preparing to defend against it. The notice does indeed state that the negligence was that of a "superintendent" or of an "acting superintendent," but it would be wholly unreasonable to require the injured employé to state with absolute accuracy the particular position in the employer's service of the superior through whose lack of reasonable care and prudence an operation has been negligently carried on. So, too, the notice states an alternative cause of the occurence, viz., furnishing the deceased with an unsafe tool, a claim since abandoned. But in the very case on which defendant mainly relies (Finnigan v. N. Y. Contracting Co., supra) the New York Court of Appeals says:

"A claimant at the time of serving notice might justifiably believe that there was a cause of the accident, which however, on the trial he might fail to establish, and the notice should not be held invalid because it contained a statement of plural causes—really believed to exist even though some one was not established."

This language exactly describes the notice here, which is very different from the one condemned in the Finnigan Case, where the cause was alleged to be failure to furnish safe place; failure to furnish suitable

tools, failure to inspect guard and protect the place, failure to furnish competent foreman, failure to furnish competent employés, and failure to promulgate and enforce proper rules.

Since the sufficiency of the notice depends upon the construction to be given to a state statute, the federal courts will follow the construction of that statute approved by the state court of last resort. We find nothing in the decisions of that tribunal which would require the rejection of this notice as not conforming to the requirements of the act. It is necessary to cite only the causes found on the briefs. The Finnigan Case has already been referred to. In Bertolami v. United Engineering Co., 198 N. Y. 71, 91 N. E. 267, it was held of a notice not materially different in those particulars from the one before us that it "does state beyond substantial criticism what did actually cause the injuries—and that the specifications of defendants legal agency in causing the accident—are apt and applicable." The latest deliverance of the Court of Appeals is in Logerto v. Central Building Co. (April 26th, 1910) 198 N. Y. 390, 91 N. E. 782. In that case the only statement of the cause of the injury was that "certain earth, stone and material was caused and permitted to fall upon and seriously injure" the plaintiff. This was held insufficient; the court, by Cullen, C. J., saying:

"Whether the plaintiff was injured by the caving of the bank, by earth falling from the boxes in which the material excavated was removed, by accident to the derricks which elevated the boxes, suffering the material to fall, or by the foundation walls, which were being constructed, falling on him, the notice gives no intimation whatever. The most illiterate person would not have stated to another the occurrence of this accident and injury to the plaintiff in the bald terms of the notice. He would have told to some extent how the occurrence happened. It might be in the most terse language that a bank in which the plaintiff was digging fell down upon him; that material which was being taken out of the excavation had been suffered to fall on him; that a wall had given way and injured him. This much, at least, should be specified in the statutory notice, and it is imposing no unreasonable burden on the employé to require it."

The notice in the case at bar seems to be in reasonable conformity to the statute as interpreted by the state court.