UNITED STATES GYPSUM CO. v. SLIWIENSKA.

(Circuit Court of Appeals, Second Circuit. December 12, 1910.)

No. 98.

1. COURTS (§ 325*)—FEDERAL COURTS—JURISDICTION—WAIVER.

An objection to federal jurisdiction on the ground that plaintiff, a subject of the emperor of Austria, could not maintain the action in the district where the suit was brought against defendant, a corporation of another state, involved a matter of personal privilege, which defendant waived by appearing and answering to the merits.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 884; Dec. Dig. § 325.*]

2. MASTER AND SERVANT (§ 286*)—DEATH OF SERVANT—MINE—NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a miner by the fall of material from the roof, owing to the alleged negligent taking out of certain props preparatory to removing a tramway, whether the props were taken out in accordance with the express directions of defendant's mine foreman held for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 293*)—DEATH OF SERVANT—ACTION—INSTRUCTIONS.

In an action for death of a miner by the fall of a portion of the roof, due to the alleged negligent removal of certain props, there was evidence that the props were removed in the manner prescribed by defendant's foreman, while he denied having directed that the props be so removed. The court in charging the jury reminded them that there was a sharp

conflict of testimony on such issue, and that, unless they found by a fair preponderance of the evidence that the foreman was negligent, plaintiff could not recover, and that, if the action should be determined in plaintiff's favor, it must be so determined because the foreman was negligent, either in failing to give proper instructions as to how the work should be done or in giving faulty instructions. The court also reminded the jury that plaintiff's witness had received injuries from the falling rock at the same time, and had brought suit against defendant therefor, and that the same person was still defendant's foreman. *Held*, that such instructions sufficiently presented to the jury the controverted issue as to the foreman's instructions.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 293.*]

**4. COURTS (§ 366*)—FEDERAL COURTS—FOLLOWING STATE'S DECISION.**
Since the sufficiency of a notice of injury to or death of an employé to a master preliminary to a suit required by the New York employer's liability act (Consol. Laws, c. 31, art. 14) depends on the construction to be given to that statute, the federal courts in determining such question will follow the construction of the statute approved by the state court of last resort.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**5. MASTER AND SERVANT (§ 252*)—DEATH OF SERVANT—EMPLOYER'S LIABILITY ACT—NOTICE.**
The New York employer's liability act (Consol. Laws, c. 31, art. 14), provides that no action shall be maintained under the act for injuries to, or death of, a servant unless notice of the time, place, and cause of the injury is given to the employer. *Held*, that a notice under such act alleging a servant's death, and that it occurred on the morning of August 13, 1909, in a chamber of defendant's mine, known as the "Big John room," that while decedent in the discharge of his duties as a laborer in the mine was taking down props which supported the roof it suddenly caved in and buried him, and that the cause of the accident was the negligence of defendant's superintendent in directing deceased to knock down props to enable another workman to shift the tramway or track, instead of directing the latter workman to remove the track in sections, was not defective because it also stated several additional alternative causes of the accident, to wit, that the roof was not properly supported and timbered; that there had not been the proper inspection; that the place was unsafe: that proper rules had not been promulgated; and that the superintendent and workmen were not competent, none of which additional causes plaintiff was successful in proving.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 252.*]

In Error to the Circuit Court of the United States for the Western District of New York.

Action by Maryjanna Sliwienska, as administratrix, etc., of Frank Sliwienska, her husband, to recover damages suffered by his death, against the United States Gypsum Company. The action was instituted under the New York employer's liability act (Consol. Laws, c. 31, art. 14), and, the jury having found a verdict for plaintiff, defendant brings error. Affirmed.

C. B. Gibbs, for plaintiff in error.

T. A. Sullivan, for defendant in error.

LACOMBE, Circuit Judge. An objection discussed on the briefs to the jurisdiction of the Circuit Court on the ground that the plaintiff, a subject of the emperor of Austria, could not maintain the action in the Western District of New York against defendant, a corporation of New Jersey, was abandoned on 'the argument. Such objection was a matter of personal privilege, which was waived by defendant's appearing and answering on the merits.

The accident happened through a fall of rock from the roof of a gypsum mine then being operated by defendant; the particular chamber where it occurred being known as "Big John room." The character of the roof is succinctly set forth in the following excerpt from the charge:

"The stratum consists of a bed of gypsum, a formation of so-called ash rock, then an upper formation of limestone. When the gypsum is removed the ash rock becomes a menace and a danger to those who are employed in the mine, in that, when the ash rock becomes exposed to the atmosphere or to moisture, it becomes brittle, and is apt to fall down upon the miners, and it is for that reason that props are required to be placed underneath the layer of ash rock in order to keep it in place; and it is for that reason that two rows of props were placed on each side of this rail leading into and out of the chamber called 'Big John.' "

The chamber was about 40 to 50 feet wide, and through its center there ran a tramway, on a curve. On the day in question it was desired to brush the roof in order to permit the mule to draw the cars in which the débris and the mined material is placed so as to draw it to the shaft to be hoisted to the surface of the mine. It was contended by the plaintiff that orders were also given to straighten the track, shifting it somewhat from its old position, an operation which necessitated the removal of some of the standing props. Engaged in this work were decedent, who was a prop setter, one Julian, also a prop setter, and Dominick a track layer. All these had had experience in such work, and had received general instructions as to the way in which it should be done. The evidence tended to show that it is safer to move the track in small sections, because in that way it would not be necessary to disturb so many standing props. The moving, however, can be done faster if the track be shifted as a whole. Moreover, it was testified that, before any prop is removed to make clearance for the track, another should be set up as near the place from which the prop is removed, as the conditions of the work will permit. On this occasion Dominick, being ready to shift the track, asked the two prop setters to remove some of the props, and himself knocked out one. Julian knocked out another and decedent knocked out two; but in no instance was a new prop set up before the standing one was knocked out. There seems no dispute on the testimony that as a consequence of this careless way of doing the work the rock which killed Sliwienska fell from the roof. If this were all, plaintiff could not recover, because Julian and Dominick were concededly fellow servants of decedent. But there was evidence as to the instructions given by O'Brien, the mine foreman, a "person intrusted with and exercising superintendence" within the terms of the statute. Julian testified that

O'Brien told him that morning, in the presence of deceased, to go to the Big John room to move that track. Being asked specifically what O'Brien said, he replied:

"O'Brien says for Frank and me to go to Big John room, knock down props, move the track, and after set up props in a straight line."

O'Brien flatly denied this. The witness Julian was a foreigner apparently speaking English imperfectly, and his testimony seems not to be especially persuasive, but with such a statement by him in the case it would have been error for the court to take it from the jury. It was for them to decide which statement was truthful. In charging the jury the court reminded them that there was a sharp conflict of testimony on this branch of the case between O'Brien and Julian and instructed them that "Unless the jury find, by fair preponderance of the evidence, that O'Brien was negligent, plaintiff cannot recover." And again:

"If the action is to be determined in favor of the plaintiff, it must be so determined because the foreman O'Brien was negligent, either in failing to give proper instructions to these men as to how the work was to be done, or because he instructed them faultily."

He also called the jury's attention to the facts that Julian had received some injuries from the falling rock, and had brought a suit himself against defendant, and that O'Brien was still defendant's foreman. We think the controverted question as to specific instructions for the doing of this work was presented to the jury most carefully and with conspicuous fairness, and find no merit in the assignments of error dealing with this branch of the case.

It is further assigned as reversible error that the court submitted to the jury, as a question of fact, whether the place where the accident occurred was reasonably safe when the work commenced, and that it declined to charge that it was a reasonably safe place at that time. The record of what took place from the beginning of the charge to the close of the case does not sustain this assignment. Besides the instructions given in the excerpts already quoted, the court, after referring to the fact that there were a number of charges of negligence asserted in the complaint, stated that:

"At the close of the case reliance is finally placed upon the assertion that defendant was negligent in that it failed to properly and adequately inspect this mine, and, further, that the foreman, O'Brien, failed or omitted to give proper and sufficient instructions to the employé Julian and the deceased as to the manner in which this track should be shifted, and, in fact, by negligently instructing them on this morning in question to go into the Big John chamber to shift this track and to first to take down the props. Now, it is to those two questions, I think, that plaintiff directs your attention."

Elsewhere in the charge the court stated the general rule as to the master's obligation to furnish a reasonably safe place in which to work, pointing out that it was the position of defendant that this Big John chamber was reasonably safe on the morning the work began, and that, if it became unsafe, it was due to the faulty manner in which decedent and his associates performed their work. When the time came for

either side to state objections to the charge, it was suggested that there was being submitted to the jury questions as to the reasonable safety of the place when the work commenced and as to failure to inspect. After some discussion, the court finally charged the jury that:

"Before plaintiff can recover in this action, she is bound to show by a fair preponderance of the evidence that what O'Brien said and did was the sole cause of the injury."

We are satisfied that the jury were sufficiently instructed that this was the only point in the case for their consideration.

It is finally assigned as error that the notice of the time, place, and cause of the injury "was insufficient in that it did not properly state the cause of the accident." We had the subject of notice under this statute before us in Pennsylvania Steel Co. v. Lakkonen (C. C. A.) 181 Fed. 325, decided August 1, 1910, holding that, since the sufficiency of the notice depends upon the construction to be given to a state statute, the federal courts will follow the construction of the statute approved by the state court of last resort. The decisions of the New York Court of Appeals down to that time were referred to, and we found the notice then before us sufficient, because, beside giving time and place, it stated—

"the cause of the injury, to wit, the fall of the large piece of iron from above at the place where Lakkonen was put to work, and indicated that the cause of the accident was the negligence of a superintendent or an acting superintendent. With such a notice as this there certainly would be no difficulty in investigating the charge and preparing to defend against it."

We further held that the notice was not vitiated because it stated an alternative cause of the occurrence, viz., furnishing the deceased with an unsafe tool, a cause since abandoned. In so holding we followed Finnigan v. N. Y. Contracting Co., 194 N. Y. 244, 87 N. E. 424, 21 L. R. A. (N. S.) 233, where the court said:

"A claimant at the time of serving notice might justifiably believe that there was a cause of the accident, which, however, on the trial he might fail to establish, and the notice should not be held invalid because it contained a statement of plural causes—really believed to exist even though some one was not established."

The notice served in the case at bar is given in full in a footnote.[1] It states that the accident which caused the death took place on the morning of August 13, 1909, in a chamber of defendant's mine known as "Big John's room"; that while deceased in the discharge of his duties as a laborer in the mine was taking down props which supported the roof the said roof suddenly caved in and buried him; and that the cause of the accident was due to the fact that defendant's superintendent negligently directed deceased to knock down props for the purpose of enabling another workman to shift a tramway or track, instead of directing this latter workman to move the track in sections, the removal of the props causing this roof to become insecure and unsafe and to cave. The notice also states several alternative causes of the

[1] See note at end of case.

accident, viz., that the roof was not properly supported and timbered, that there had not been proper inspection, that the place was an unsafe one, that proper rules had not been promulgated, and that the superintendent and workmen were not competent.

There is no reason to suppose that this statement of plural causes was not made in entire good faith, plaintiff believing that they all contributed to produce the unfortunate result. It cannot be said of them as it was in the Finnigan Case that "all of them could not within any reasonable probability be applicable to a single accident." Upon the trial plaintiff undertook to prove most of them, but failed except as to the one sent to the jury. The notice here differs from those in the Finnigan Case, supra, and in Logerto v. Central Building Co., 198 N. Y. 390, 91 N. E. 782; because, as was said by the same court of the notice in Bertolami v. United States Engineering & C. Co., 198 N. Y. 71, 91 N. E. 267:

"It does state beyond substantial criticism what did actually and directly cause the injuries, whereas the Finnigan notice did not, and also the specifications of defendant's legal agency in causing the accident, although perhaps in some degree general when considered simply by themselves, are apt and applicable, whereas no one of those in the Finnigan case was."

In the Finnigan Case the physical cause of the accident was the failure to discover and remove an unexploded charge of dynamite at a place near where the deceased was put to work and where he was liable to and did accidentally cause its explosion. But the notice wholly failed "to describe or include what was the underlying cause of the accident, namely, allowing an unexploded charge of dynamite to remain in the rocks near where intestate was placed at work."

In Heilig v. Burns, 133 App. Div. 764, 118 N. Y. Supp. 101, cited on defendant's brief, the notice, which was held insufficient, merely stated that while plaintiff was in a shanty under a trestle a large heavy timber fell or was thrown or precipitated down through the roof of said shanty, but wholly failed to indicate what caused the timber to fall and what act or omission of defendant constituted negligence.

In Logerto v. Central Building Co., supra, although the notice enumerated various assignments of negligence, all that was told about the accident was that "certain earth, stone and material was caused and permitted to fall upon me." The court held the notice insufficient, saying:

"Whether the plaintiff was injured by the caving of the bank, by earth falling from boxes in which the material excavated was removed, by accident to the derricks which elevated the boxes, suffering the material to fall, or by the foundation walls, which were being constructed, falling on him, the notice gives no intimation whatever. The most illiterate person would not have stated to another the occurrence of this accident and injury to the plaintiff in the bald terms of the notice. He would have told to some extent how the occurrence happened. It might be in the most terse language that a bank in which the plaintiff was digging fell down on him; that material which was being taken out of the excavation had been suffered to fall on him; that a wall had given way and injured him. This much, at least, should be specified in the statutory notice, and it is imposing no unreasonable burden on the employé to require it."

The notice in the case at bar when tested by the decisions of the New York Court of Appeals seems to be sufficient under the statute. The judgment is affirmed.

### NOTE.

The notice referred to in the opinion reads as follows:

"You will please take notice that Frank Sliwienska while in your employ as a laborer on the 13th day of August, 1909, was injured, and that such injury resulted in his death on the said 13th day of August, 1909.

"You will take further notice that the place where the accident occurred which caused the injury to and the death of the said Frank Sliwienska was in a chamber or tunnel commonly known as 'Big John's Room,' and being about 300 feet distant in an irregular line from the foot of the shaft or entrance to a gypsum mine or quarry, owned, operated, and maintained by you in the town of Oakfield, county of Genesee, New York, known as 'Number 3 mine.'

"You will take further notice that the cause of the said accident, injury, and death was due to the fact that on the morning of the said 13th day of August, 1909, while the said Frank Sliwienska was in discharge of his duties as a common laborer in the employ of your company in the said mine or quarry, above referred to, and while he was taking down and removing timbers or props which supported the roof or ceiling of the said mine or quarry the said roof or ceiling suddenly and without warning caved in and buried him under the same, causing injuries which resulted in his death; that the cause of the said accident, injuries, and death was also due to the fact that your company and your superintendent or person charged with and intrusted with the duties of superintendency negligently and carelessly directed and required him to knock down and remove said timbers or props for the purpose of enabling another workman to move and shift a tramway or track a distance of about four feet, instead of causing, directing, and requiring him to take said tramway or track apart and move the same in sections, the taking down and removal of the said timbers or props causing the roof or ceiling of the said mine or quarry to become weak, insecure, and unsafe and to cave in.

"You will also take notice that the cause of the said accident was also due to the fact that your company and your superintendent or person exercising the duties of superintendency carelessly and negligently failed to properly timber said mine or quarry, and failed and neglected to properly secure and support the roof or ceiling of the said mine or quarry and in directing and requiring him to work in an unsafe and dangerous place, and under dangerous materials in violation of the provisions of section 122 of chapter 31 of the consolidated laws (Labor Law); and also by reason of the fact that you and your superintendent failed to designate a competent person to make a daily inspection of the said mine or quarry and the roof and ceiling of the same, and failed to furnish timbers of ample size and strength and of sufficient quantity to properly protect, secure, support, and shore up the said roof or ceiling, and that you failed and neglected to personally examine or have a competent person inspect said roof or ceiling in said mine or quarry after blasting and before the same was safe, and also failing to inspect and examine the appliances in said mine or quarry to see whether they were safe, in violation of the 367 rules and regulations prescribed by the Commissioner of Labor; and also in failing and neglecting to provide a safe, and proper place for the said Frank Sliwienska and his fellow employés to work and in failing to provide safe and proper ways, and by reason of your failure and of your superintendent to make, promulgate, and enforce and to post rules for the daily guidance of the said Frank Sliwienska and his fellow employés in the said mine or quarry under the provisions of chapter 31 of the consolidated laws (Labor Laws), and also by reason of the neglect and failure of you to employ a competent superintendent and competent fellow servants to work with him in failing to warn him of his danger and negligently and carelessly managing and operating said mine or quarry."