is often the best, and even the only, kind of evidence available; that is, statements of the person himself which tend to disclose his mental attitude. Nor does such evidence become inadmissible by reason of the fact that it may indirectly tend to impeach a witness by establishing an inconsistency or self-contradiction upon his part. The evidence could have been equally admissible if he had not been sworn as a witness.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event.

### CHINN v. FERRO–CONCRETE CONST. CO.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1911.)

1. MASTER AND SERVANT (§ 278\*)—INJURIES TO SERVANT—EVIDENCE—PRIMA FACIE CASE.

   In an action for injuries to a servant by the fall of a plank forming part of the falsework underneath concrete flooring as plaintiff and others were engaged in removing same, evidence *held* to establish a prima facie case of actionable negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.\*]

2. MASTER AND SERVANT (§ 107\*)—INJURIES TO SERVANT—SAFE PLACE.

   Plaintiff was employed by defendant as a member of the concrete gang wheeling concrete and finishing off the floors of that material. The foreman ordered plaintiff and two others to take down planks that had been left to support the first floor, with knowledge that they had had no experience in the work, which had previously been done by wreckers, and gave them no instructions as to the manner of doing it. Plaintiff was directed to knock out the shoring that supported the planks and carry it off while the other two held the ends of the planks with bars while standing on ladders. To do this, they were obliged to reach above their heads and let down the soggy, heavy plank, and, after three or four had been taken down in this manner, one of the planks got away from them, and, the ladders being unsteady on the floor, to save themselves and the plank from falling they swerved it to one side, so that it hit plaintiff, causing serious injury. *Held*, that defendant was negligent in failing to provide a reasonably safe place to work.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202; Dec. Dig. § 107.\*]

3. MASTER AND SERVANT (§ 153\*)—INJURIES TO SERVANT—WARNING AND INSTRUCTING.

   Plaintiff being inexperienced in the work of taking down the falsework, defendant was guilty of negligence in failing to warn and instruct him as to the dangers of the work and the method of performing it.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 314–317; Dec. Dig. § 153.\*]

4. MASTER AND SERVANT (§ 168\*)—INJURIES TO SERVANT—INCOMPETENT FELLOW SERVANTS.

   Defendant in such case was guilty of negligence in failing to provide plaintiff with competent fellow servants and in failing to supervise the work of such servant.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 337–340; Dec. Dig. § 168.\*]

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEG-
LIGENCE.

Considerable time having elapsed after plaintiff carried away the
props from under the plank, giving him ample opportunity to get from
under the plank before it fell, and it having veered to one side and fall-
en upon him suddenly without warning, he was not negligent as a matter
of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1089–1132; Dec. Dig. § 289.*]

6. TRIAL (§ 279*)—OMISSION TO CHARGE—EXCEPTIONS—SPECIFICNESS.

An exception to the failure of the presiding judge to charge on an issue
with sufficient specificness must itself be specific and call the court's at-
tention to the particular deficiency relied on.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 690; Dec. Dig. §
279.*]

McLennan, P. J., and Williams, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by William Chinn against the Ferro-Concrete Construction
Company. From a judgment for plaintiff and from an order denying
a new trial on the merits, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

A. D. Jenney, for appellant.
Harlan W. Rippey, for respondent.

SPRING, J. In the summer of 1909 the defendant was engaged in
the construction of a large reinforced concrete building on Hart street,
in the city of Rochester. The work was carried on by separate gangs
of men, each devoted to its specific kind of work. The plaintiff, a
young man 27 years of age, was employed with the concrete gang in
wheeling concrete and finishing off the floors of that material. The
first floor was 16 feet from the ground, and at the time of the ac-
cident most of the false forms used in the process of construction had
been removed. There were heavy planks between the girders, each
over 18 feet in length, 8 inches wide, and 2 inches thick, which were
held in position by supporting shores or posts 4 inches square rest-
ing on the ground, as the concrete floor had not been laid. Concrete
had been poured in troughs above these planks, and when that had
hardened the shores were knocked from under, the braces removed,
and the planks pried loose with pinch bars and taken down. A wreck-
ing gang had charge generally of the removal of the falsework, and
it was composed of men experienced in that kind of work. Much of
the wrecking work had already been done by this gang, but the sup-
port was left in the center of each of the heavy planks in one part of
the building.

On the morning of the accident, Culp, the foreman in general charge
of the work on the building, told Chaney to remove these shores and
braces and take down the planks, and Adams was directed to assist him.
Neither of these men, as the foreman knew, had had any experience
in this work; nor did Culp give them any instructions as to the man-

ner of doing it. Culp directed them to take ladders and carry down these planks. A little later in the forenoon he told the plaintiff to go over and help Chaney, and the latter directed him to knock out the shoring and carry it off. Chaney and Adams went up the ladders, holding up the end of the plank with bars, and the plaintiff knocked out the shoring and carried it and the braces away; and the other two men pried the planks loose and carried them down. Four planks had been removed in this manner. As they were standing on their respective ladders, they were obliged to reach above their heads in order to pry loose and let down this soggy, heavy plank, and it got away from them. The ladders were not steady, as the ground floor was uneven, and in the effort to save themselves and the plank from falling they swerved it to one side, and it hit the plaintiff; a nail or spike penetrating his skull and causing injuries resulting in the paralysis of one side and epileptic seizures which will be permanent.

Culp, the foreman, knew of the manner in which this work was carried on and did not attempt to change the method of its performance. He knew the plaintiff was removing the shores and braces, and knew of the inexperience of Chaney and Adams, and that the plaintiff was one of the concrete gang on this building and had had no experience whatever in the work which he directed him to perform until the day he was so frightfully injured by the taking down of this heavy plank. The plaintiff was obeying the direction of Chaney to remove the shore and braces when the plank fell down and injured him.

[1] No evidence was offered on the part of the defendant, and the plaintiff made out a prima facie case, and the verdict was not against the weight of evidence.

[2–4] In the first place, the defendant did not furnish a reasonably safe place in the circumstances which the evidence discloses. We appreciate this rule is to be applied in the light of the fact that this building was in process of construction, and that the business was, to some extent, hazardous. Notwithstanding these facts, it was still incumbent upon the defendant to protect its men so far as it was reasonably able to do so.

In the second place, the men employed to do this work were incompetent and inexperienced. The evidence shows that the men who usually did such work consisted of a wrecking gang and were men familiar with the business and the most feasible and safe way of performing it. Chaney and Adams received no instructions from the defendant. It is not a question of rules; it is a question of failure to warn or instruct the plaintiff, and also Chaney and Adams, as to the way in which this work should be performed which constitutes the negligence of the defendant.

Third. The way in which the work was done warranted the jury in finding that the men were incompetent. Chaney was on the ladder so that he was obliged to reach above his head to take hold of his end of this plank weighing about 100 pounds, and it was wet and slippery. Culp, the general superintendent, saw the way in which this was done and did not interfere. He knew that the work was being

done in a dangerous manner, and he should not have allowed it to proceed. O'Brien v. Buffalo Furnace Co., 183 N. Y. 317, 76 N. E. 161; Reilly v. Troy Brick Co., 184 N. Y. 399, 77 N. E. 385.

It is not a question of which of two ways is preferable. The jury have found that the method which the defendant permitted to be followed was reckless and careless, and the evidence justified this conclusion.

[5] Fourth. The jury had a right to find that the plaintiff was not guilty of contributory negligence. Three or four of the planks had been taken down before this, and in each instance he had been directed to carry away the props and supports which he had knocked from under the planks. He did this as soon as they fell down, and the foreman knew about that. This necessarily placed him somewhat under the plank; but considerable time elapsed before the plank came down, and he had plenty of opportunity to obey the direction which was given to him. At the time of the accident he was not directly under the plank which fell, and it dropped down suddenly and without any notice or warning to him and veered off to one side and fell upon him. We cannot say, therefrom, as matter of law, that he was guilty of contributory negligence. He was engaged in the performance of his duty, in the manner in which he had been performing it with the apparent approval of the defendant, and he was hit and injured by reason of the negligent manner in which the work was performed.

[6] Fifth. The presiding justice at the trial submitted to the jury in a very general way the question whether the defendant should have promulgated rules to govern the employés in this work. This submission may well be held to have related to the instructions or warning which the jury may have found should have been given to the plaintiff and his coemployés. The exception to this part of the charge was not specific and did not call the attention of the court to the proposition that it was susceptible to the interpretation by the jury of an independent, distinct statement disconnected from the subject of instructions or warnings with which it was collocated in the main charge.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur, except McLENNAN, P. J., who dissents in an opinion, and WILLIAMS, J., who votes for reversal on the ground that the verdict was excessive.

McLENNAN, P. J. (dissenting). The accident which is the subject of this action occurred on the 31st day of July, 1909, at about 10 o'clock a. m. At the time and for a considerable period prior thereto, the plaintiff was employed by the defendant as a common laborer, and it was engaged in constructing a large reinforced concrete building in the city of Rochester, N. Y. In the erection of such building the defendant employed several hundred men, many of them being skilled and expert mechanics and being specially trained to carry on by the most approved method the different parts of the work. There was also employed a number of "common laborers," so called, who did not possess any expert knowledge, and who were only required to

perform certain manual labor not involving any expert skill or knowledge.

At the time of the accident, the basement or first story of the building had been practically completed, except that the floor had not been laid, and certain planks and timbers, which had been used in making the forms or falsework for the construction of the ceiling, had not been removed.

The evidence tends to show, and it is practically conceded, that in the construction of such ceiling, in making and putting up such forms and falsework, it was necessary to employ expert and skilled labor and so, too, in removing the same, if such forms were to be removed without taking them apart. Therefore a wrecking gang was employed to remove such forms and falsework who had special knowledge as to the reasonably safe method of removing the same. A day or two prior to the accident, such wrecking gang had removed from the ceiling of the basement all the forms or falsework except certain planks which had formed the bottom of the forms, in which the concrete had been poured to make the girders or beams of the ceiling, and the posts or props extending from the ground to such planks which tended to hold them in place. Such planks extended along the bottom of such beams or girders, being 2 inches thick, from 6 to 8 inches in width, and varying in length from 12 to 18 feet.

Such being the situation of the basement and its ceiling, the plaintiff with two coemployés, all healthy, strong men, were directed by the defendant's boss or superintendent to remove such planks from beneath such girders or beams and to place them on the ground below, a distance of from 14 to 16 feet, without breaking them. Plaintiff and his two coemployés entered upon such work upon the morning of the day in question. They had removed 4 planks, 18½ feet long, 8 inches wide, and 2 inches thick, and which weighed between 75 and 120 pounds, without accident, and such removal was made as follows: One of plaintiff's associates got a ladder which enabled him to reach one end of the plank in question, and the other, by means of another ladder, reached the other end. When both had reached such position, one of them directed the plaintiff to knock out the prop from under the plank, which he did, and both men on the ladders commenced to pry the plank loose with pinch bars, intending, when it became disengaged from the girder, that with one holding onto each end they would carry it down the ladders and place it upon the ground. But when the plank had become fully detached from the girder, and the man on one of the ladders attempted to hold one end of it, because of the insecure placing of the foot or feet of the ladder upon which he was standing, he lost his balance, and to save himself let the plank fall to the ground. The plaintiff, at the time apparently giving no attention to what was being done with the plank above, had stooped to pick up and carry away the timber or support which he had knocked from under the plank, and the plank fell, striking him upon the head and causing the very serious injuries for which he seeks to recover in this action.

The action was tried and submitted to the jury as a common-law action. The evidence is practically undisputed, and it is only necessary to determine whether or not such evidence tended to establish actionable negligence against the defendant.

As before said, the material facts in this case are not in dispute and, as it seems to me, present one of the simplest and most ordinary situations. The defendant was desirous of having removed from the ceiling of the basement of the building it was erecting a plank 18 feet and 6 inches long, 8 inches wide, and 2 inches thick, which weighed from 75 to 120 pounds. The defendant sent three of its employés to make such removal and to lower the plank from such ceiling to the ground. It appears without contradiction that they had successfully and without accident removed four other planks during the same morning situated precisely as the one in question. There is no suggestion in the evidence that the whole situation was not perfectly obvious to the plaintiff and to his associates. His two associates were to loosen the plank above and bring it to the ground. Of course, he knew that, if they let the plank drop and he was under it, injury would probably result to him. The plank did not fall immediately when the plaintiff knocked out the prop from under it, but it remained in place until his two coemployés had loosened it, and when the weight of the plank came upon them, by reason of the insecure footing of the ladder which they had placed upon the uneven ground, one of plaintiff's coemployés let go of the plank, and plaintiff's injuries resulted.

A large portion of the brief of respondent's counsel is devoted to the proposition that the erection of a reinforced concrete building involves expert and technical knowledge on the part of the employés and involves such work as cannot be safely performed by ordinary common laborers. · But it seems to me that the intricacies or complications of the construction of a reinforced concrete building have nothing to do with the facts in this case. As we have pointed out, the only thing that the plaintiff and his two associates, both healthy and strong men, were directed to do by the defendant, was to lower a plank, weighing from 75 to 120 pounds, from the ceiling to the ground, a distance of from 14 to 16 feet. Under such circumstances, what rule was the defendant required to promulgate in order to protect such employés? Was one that the plaintiff or anybody standing upon the ground must not get under a falling plank or see to it that such plank did not fall when he was in position to be struck or injured by it? Under the situation developed by the evidence in this case, we think the master was not required to promulgate any rules for the protection of the plaintiff and his associates. Neither do we think it of importance that certain expert witnesses testified that in other work of this character they had seen planks of the character of the one in question lowered by means of ropes or by means of a platform which is described in the evidence. So far as the ropes are concerned, it is difficult to see how they could have been fastened to the plank until it was free from the girder above, and after it got free from such girder the difficulty arose, and there was no opportunity to attach ropes or anything else. The weight of the plank coming against the man who

was upon the ladder which had not been properly placed made him lose his balance and let go of the plank. The same thing would have occurred if he had had a rope with him, prepared to place it around the plank as a means of lowering it. So far as the platform is concerned, if such platform had been erected and plaintiff was on it, the falling plank would have struck him just the same, and if he was at one side of the platform thus erected, because of the direction in which the plank in question fell he was equally liable to accident, because the plaintiff contends that the plank did not fall perpendicularly down, but swerved to one side of the place from which the prop had been removed.

The case was submitted to the jury principally upon the theory that the plaintiff and his two associates were furnished with an unsafe place in which to work. The place was absolutely safe. It was light. There was plenty of room in which to perform the task assigned to them; plenty of room in which to knock out the prop under the plank, which the plaintiff did; and his associates were strong enough and entirely competent to hold the plank from falling, in case one of them had placed his ladder securely and thus prevented the losing of his balance and the consequent falling of the plank.

I think there is no basis in the evidence for the suggestion that the method which was employed to lower the plank in question was unsafe and such as to charge the defendant with negligence in that regard. The defendant was not required to employ the safest method, but only such as was reasonably safe under all the circumstances, and this, we think, the evidence demonstrates that it did when all the circumstances are considered. Heilig v. Burns, 133 App. Div. 764, 118 N. Y. Supp. 1112; Apati v. D. L. & W., 64 App. Div. 515, 72 N. Y. Supp. 322. Neither is there basis in the evidence for the contention that the defendant was negligent in that it hired coservants who were known by it to be incompetent. There is not a word to indicate that either of plaintiff's associates had ever been guilty of an act of negligence before, and there is not a particle of evidence to indicate that the defendant had knowledge that they were in any way incompetent. Indeed, the only contention of respondent in this regard is that they were incompetent to do the work in question, to wit, lower the plank from the ceiling to the ground, because they were common laborers, and did not possess expert knowledge in regard to the construction of a reinforced concrete building, or did not possess technical knowledge in respect to taking down the forms which had been erected for such construction, forgetting, as it seems to me, the proposition before stated that the only thing here to be done by the plaintiff and his associates was to lower a plank from the ceiling to the ground, which was in plain sight and which was being taken down precisely as at least four other planks had been taken down by himself and his associates immediately prior to the accident.

I conclude upon all the evidence in this case that the plaintiff failed to establish actionable negligence against the defendant, and that the judgment and order appealed from should be reserved, and a new trial granted, with costs to the appellant to abide the event.